# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC<br><br>Plaintiff,<br><br>v. | |
| GOOGLE LLC. | Case No. 2:19-cv-90-JRG<br>LEAD CASE |
| AKAMAI TECHNOLOGIES, INC. | Case No. 2:19-cv-89-JRG |
| NETFLIX, INC.<br><br>Defendants. | Case No. 2:19-cv-91-JRG |

## JOINT MOTION FOR ENTRY OF PARTIALLY DISPUTED PROTECTIVE ORDER

Plaintiff Personalized Media Communications, LLC ("PMC") and Defendants Google, LLC., Akamai Technologies, Inc., and Netflix, Inc. (together, "Defendants") (collectively, the "Parties") hereby move the court for entry of a Partially Disputed Protective Order.

Having met and conferred, the Parties were unable to reach agreement on the issues set forth below, and respectfully request that the Court resolve these disputes. The positions of the Parties are presented below.[1]

1. **Whether Defendants' Confidential Source Code, and Draft Expert Reports and Pleadings that Contain Said Source Code, May be Transmitted Electronically or by Federal Express**

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 10(e) above to another person | A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 10(e) above to another person |

---

[1] The below summary, as well as the accompanying Partially Disputed Protective Order attached as Exhibit A, identify the areas in dispute with Plaintiff's proposals highlighted in yellow and Defendants' proposals highlighted in green.

authorized under paragraph 10(e) above, on paper via hand carry on paper or removable electronic media (e.g., a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express or other similarly reliable courier. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet.  Source Code Material may only be transported electronically as is reasonably necessary for filing any Source Code material with the Court. Notwithstanding anything else in this Protective Order, the Parties may make electronic copies, and send by electronic mail, copies of Source Code Documents, and any notes taken during Source Code review pursuant to subparagraph (k) below, as part of their preparation of draft pleadings and/or expert reports in this case, provided that any such documents sent by electronic mail are sent in a password-protect file, with the password sent via separate electronic mail.

authorized under paragraph 10(e) above, on paper via hand carry. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code Material may only be transported electronically as is reasonably necessary for filing any Source Code material with the Court.

**Plaintiff's Position:**

First, Defendants seek to prohibit PMC from transporting any source code material except by paper carried by hand. There is no such prohibition in this District's model order, which permits transmission of source code on removable electronic media sent by Federal Express. Indeed, such a prohibition is so restrictive as to prohibit any productive work related to Defendants' source code. That is particularly true where all Parties employ outside counsel of record—and likely, will retain experts—who are located all over the country. It would be prohibitively expensive and cumbersome to conduct the necessary work on this technical case using paper copies carried across the country by long-distance hand courier.

Second, Defendants seek to prohibit PMC from any electronic transmission of draft expert reports and pleadings that contain quotations of Defendants' source code. Defendants have

legitimate concerns about the dissemination of portions of their source code, but their refusal to agree that draft pleadings and expert reports may be sent electronically is too extreme.  PMC has agreed that it will limit its electronic transmission of such materials only to the extent necessary to prepare pleadings/reports, and it will take the additional step of password-protecting those files with the passwords sent by separate email. These additional protections reasonably respond to Defendants' concerns without creating artificial barriers to PMC's ability to prosecute critical aspects of this case.

**Defendants' Position:**

Defendants oppose PMC's proposed additions to Paragraph 10(j) because they would greatly undermine the provisions meant to protect Defendants' source code.  First, Defendants vigorously oppose PMC's request to be permitted to transport source code materials by "removable electronic media" or "Federal Express or other similarly reliable courier." During the parties' meet-and-confer process and through multiple exchanges of the draft protective order, PMC represented it agreed that generally source code materials should only be transported by hand-carry.  Yet, less than eight hours before the deadline for filing this Protective Order, PMC changed course and proposed, for the very first time, that it be permitted to transport source code both electronically and by FedEx at any time it desires to do so.  Setting aside the fairness of this abrupt about-face, PMC's proposal that it be allowed to create electronic copies of source code to store on "removable electronic media" introduces a host of security risks, particularly given that PMC is already entitled to receive up to three paper copies of any requested source code printouts. Unlike paper copies, removable electronic media such as flash drives are easily misplaced and can also be hacked or infected with viruses and malware that could disseminate Defendants' source code to the world.  Disclosure of Defendants' highly confidential source code could lead to

significant harm to the Defendants and PMC has provided no indication to as to how it would propose to mitigate such significant risks or why it would be burdened by having to transport source code printouts by hand. *See Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) ("[I]t is well recognized among lower courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property."). This is why courts in this district and others have routinely prohibited source code from being electronically copied. *See, e.g., Finjan, Inc. v. Cisco Sys., Inc.*, No. 5:17-cv-72, 2019 WL 667766, at *14–16 (N.D. Cal. Feb. 19, 2019) ("The Receiving Party shall not create any electronic copies or other images of the paper copies and shall not convert any information contained in the paper copies into any electronic format without the agreement of the Producing Party or further order of the Court."); *Rockstar Consortium US LP v. Google Inc*., No. 2:31-cv-893, 2014 WL 5831041, at *6–7, 9 (E.D. Tex. June 19, 2014) (ordering that "the Receiving Party may not create electronic images, or any other images, of the Source Code," except for filing in a sealed "Court document"). To the extent PMC argues that it needs electronic copies of the source code for convenience, the risks to Defendants of allowing its source code to be electronically copied in this case far outweigh any marginal, convenience-related benefits to PMC. *See EPL Holdings, LLC v. Apple Inc.,* No. 12-cv-04306, 2013 WL 2181584, at *7 (N.D. Cal. May 20, 2013) (concluding that an inconvenience to the plaintiff "does not outweigh the risk posed by creating electronic copies of source code unnecessarily"); *Polycom, Inc. v. Codian Ltd*., No. 2:05-cv-520, 2007 WL 194588, at *1, *4 (E.D. Tex. Jan. 22, 2007) (finding that the plaintiffs' "assertions of inconvenience," including "several months" "away from home" while reviewing source code at the office of the defendants' attorneys, did not justify their request for "a native, electronic copy

of Defendants' source code").  In hard copy, source code is a critical step away from the digital environment, yet sufficiently convenient to review.

Next, PMC's proposal would allow it to put printed or even electronic copies of Defendants' highly sensitive source code into the hands of Federal Express or another similar carrier.  However, Federal Express is not under the direct control of anyone associated with this case or under the Protective Order.  Indeed, if the printed source code is lost in transit, there will be no one who can answer for where it went, who obtained access to it, or where it ended up, etc. Even if Federal Express or other similar carriers offer tracking services, there is not a single person responsible for the constant security of the code.  PMC has not identified any security precaution it would take in handing over its code to these third parties, including even services offered by Federal Express to protect more valuable or confidential shipments.  That Federal Express offers such enhanced services ("On-Board Courier service available for 'hand-carry' shipments requiring more assurance of security and control." and "Secure Transportation Solutions") reflects that such additional protections are needed and commercially common.  *See* *http://customcritical.fedex.com/us/services/air-expedite/*.

Finally, PMC's suggestion that it should be entitled to email draft expert reports and pleadings that contain source code further amplifies the risks already identified.  Emails can easily be intercepted or even inadvertently sent to an incorrect recipient who may not be bound by the Protective Order at all.  Allowing PMC to include in those emails Defendants' highly confidential source code provides yet another avenue by which their sensitive code could be lost, stolen, misused, or disclosed to the world.  Draft pleadings and expert reports, to the extent they need to be electronically transmitted, can and should omit the verbatim recitation of protected highly

confidential source code.  Accordingly, Defendants respectfully request that the Court deny PMC's

request to create electronic copies of their source code or transport it by FedEx.

### 2.   Whether PMC Should be Subject to an Acquisition Bar

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
|  | Absent written consent from the Designating Party, any individual affiliated with PMC who obtains, receives, has access to, or otherwise learns, in whole or in part, the Defendants' technical Designated Material under this Order shall not be involved in any activity related to: the (i) the acquisition of patents or patent applications relating to the Field of Invention or (ii) the advising or counseling clients regarding the same.  This Acquisition Bar shall begin when such Designated Material is first received by the affected individual and shall end three (3) years after the conclusion of this Action, including any appeals. |

**Plaintiff's Position:**

Defendants argue that, in addition to barring certain prosecution activity, the prosecution

bar should also bar activity relating to "the acquisition of patents or patent applications relating to

the Field of Invention" including "advising or counsel clients regarding the same." The Court

should reject Defendants' acquisition bar outright.

This District's model order does not call for an acquisition bar, and acquisition bars are

rarely imposed in this District—for good reason: Acquisition bars are burdensome to patent

plaintiffs and their counsel. Here, for example, Defendants' acquisition bar would prohibit

Plaintiff's counsel from advising Plaintiff about potential acquisitions of their own patents—

advice that would not require use of Defendants' designated materials, in addition to prohibiting

Plaintiff's counsel from offering their other clients routine advice.

Most importantly, Defendants' request fails on the law. An acquisition bar is only appropriate when a defendant can show "that there is an unacceptable risk of inadvertent disclosure of Defendants' confidential material by Plaintiff's counsel" (or, in this case, by other individuals who are allowed to view Defendants' protected material). Order (Dkt. 374), Garnet Digital, LLC v. Apple, Inc., 6:11-cv-00647-LED (E.D. Tex.). But Defendants have not demonstrated that that risk is present here. Nothing in the facts of this case presents any elevated risk of "inadvertent disclosure." Indeed, this Court will recall that it has handled in the past numerous cases filed by PMC. No such ethical issues have arisen with respect to PMC or its counsel.

And even if Defendants could demonstrate an "unacceptable risk of inadvertent disclosure," they cannot also show that such a risk "outweighs [Plaintiff's] right to counsel of [its] choosing." Mem. Op. and Order (Dkt. 249), The PACid Group, LLC v. Apple, Inc., 6:09-cv-00143-LED-JDL (E.D. Tex.), at 11. There is no reason why Plaintiff should be denied the right to solicit its current counsel's advice about selling or acquiring patents for a Defendants-proposed three years after this case concludes.

Should this Court disagree with PMC and decide to impose an acquisition bar, then at the very least that bar should be reciprocal. PMC will be producing its own confidential information to Defendants—particularly as to the licensing rates paid to PMC by other significant technology companies. That licensing information might be interesting to an entity who wishes to acquire patents to assert against those technology companies. Accordingly, there is no reason why an acquisition bar should attach to Plaintiff and Plaintiff's counsel, but not also to Defendants and Defendants' counsel.

**<u>Defendants' Position:</u>**

Defendants' proposed acquisition bar effectively mirrors a similarly worded prosecution bar to which PMC and its counsel have already agreed.  Defendants propose an acquisition bar because it would be highly prejudicial for PMC and its counsel, both of whom have a demonstrated history of filing continuation patents applications and then filing lawsuits on those patents, to use Defendants' confidential information, *even if inadvertent*, to acquire patents or advise clients on the acquisition of patents to assert against Defendants' products and services.  *See, e.g., Unwired Planet LLC v. Apple Inc.*, No. 12-cv-0505, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013) (finding that "good cause exists to include in the protective order the bar that Unwired's outside counsel cannot use the confidential information obtained in this lawsuit for the purpose of giving advice on patent acquisitions"); *E-Contact Technologies, LLC v. Apple, Inc.*, Case No. 1:11-cv-00426- LED-KFG, 2012 WL 11924448, at *2  (E.D. Tex. June 19, 2012) ("This Court finds that the potential harm of inadvertent disclosure outweighs the restriction imposed on counsel for Plaintiff.  An acquisition bar should be included in the protective order."); *see also PersonalWeb Technologies, LLC v. Google Inc.,* et. al., Case No. 6:11-cv-00656 (E.D. Tex. Aug. 9, 2012), Dkt. 89, ¶ 2B (barring both prosecution and acquisition activity).  Further, courts in this district have barred counsel from access to confidential information that could be used in the acquisition of patents, and counseling regarding the same, particularly when a plaintiff has brought repeated lawsuits involving its patents.  *See Hyundai Motor Am. v. Clear With Computers, LLC,* 6:08-cv-302, Dkt. 71 (E.D. Tex. May 11, 2009); *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.,* No. 6:07-cv-346, 2008 WL 5634214, at *8 (E.D. Tex. Mar. 14, 2008); *Bright Response, LLC v. Google, Inc.*, 2:07-cv-371, Dkt. 349 (E.D. Tex. June 2, 2010) (all barring plaintiff's attorney from confidential documents because of the risk of inadvertent disclosure during the counseling and acquisition of patents).

Defendants' proposed acquisition bar is narrowly tailored and a reasonable safeguard to ensure that any person reviewing Defendants' protected materials shall not, for a period of three years following the conclusion of this case, engage in any activity related to the acquisition of patents or patent applications or advising or counseling clients regarding the same.  This is not an attempt to escape infringement allegations or to stifle competition; it merely ensures that individuals with access to such information do not inadvertently use it improperly.

In response to Defendants' proposal, PMC has indicated that it opposes this provision simply because it thinks it is unnecessary given the other protections of the Protective Order.  Defendants respectfully submit that this argument misses the point of an acquisition bar. Acquisition bars (similar to prosecution bars) serve to prevent even the *inadvertent* use of a Defendants' confidential information when evaluating patents for acquisition.  Defendants do not argue that PMC or its counsel would intentionally use confidential information for purposes outside of this litigation.  Imposing an acquisition bar for a limited time is a regular and common sense provision to ensure that attorneys who have seen Defendant's confidential information are not placed in the nearly impossible position of advising a client as if they had never seen that information.  As the Federal Circuit has noted, "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *In re Deutsche Bank Tr. Co. Ams.,* 605 F.3d 1373, 1378 (Fed. Cir. 2010) (alteration omitted) (quoting *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C. Cir. 1980)).

The justification underlying the prosecution bar (already agreed to by PMC) and the acquisition bar is identical—it will be difficult, if not impossible, for an individual who has seen Defendants' confidential information to segregate that information mentally when later advising

on patent prosecution or acquisition related to that information. The risks of inadvertent disclosure

and competitive misuse are the same with respect to both prosecution and acquisition:

> Counsel for Plaintiff has acquiesced to the imposition of a patent
> prosecution bar, and, therefore, apparently agrees that there could
> possibly be a risk of inadvertent disclosure of Defendants'
> confidential information in the course of representing their client
> before the PTO. Therefore, it is hard to conceive that there would be
> little or no risk of inadvertent disclosure when these same attorneys
> advise their client in matters regarding acquisitions of patents.

*E-Contact Techs., LLC v. Apple, Inc.,* No. 11-cv-00426, 2012 WL 11924448, at *2 (E.D. Tex. June

19, 2012); *see also EPL Holdings,* 2013 WL 2181584, at *4 (explaining that patent acquisition

and prosecution create the same risk of inadvertent use because "litigation counsel may

consciously or subconsciously use their knowledge . . . to advise a client on which patents to

acquire").

Absent a bar, the parties will be left to guess (and potentially litigate) in future cases

whether a defendant's confidential information was improperly used to acquire and assert a new

patent. *See Inventor Holdings, LLC v. Google, Inc.*, No. 1:14-cv-00186 (GMS), 2014 WL

4369504, at *1-2 (D. Del. Aug. 27, 2014) (citing the risk of "*inadvertent* disclosure" and "the fact

that the plaintiff is a non-practicing entity" as justification for imposing a two-year acquisition

bar). Accordingly, Defendants respectfully request that the Court head-off such potential future

disputes by entering this time-limited acquisition bar.

### 3. Whether Outside Counsel of Record who Obtain Access to Designated Materials May Travel Abroad with Personal Electronic Devices

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| No Protected Material may leave the territorial boundaries of the United States of America . . . . Notwithstanding this prohibition, Protected Material, exclusive of material designated RESTRICTED CONFIDENTIAL SOURCE CODE, and to the extent otherwise permitted by law, may be taken outside the territorial | No Protected Material may leave the territorial boundaries of the United States of America . . . . Notwithstanding this prohibition, Protected Material, exclusive of material designated RESTRICTED CONFIDENTIAL SOURCE CODE, and to the extent otherwise permitted by law, may be taken outside the territorial |

| | |
|---|---|
| limits of the United States if it is reasonably necessary for a deposition taken in a foreign country.  Nothing in this provision shall prevent outside counsel of record from travelling outside the territorial limits of the United States with their personal electronic devices, including laptops and/or cellphones, or reviewing their electronic mail while traveling abroad. | limits of the United States if it is reasonably necessary for a deposition taken in a foreign country. |

**Plaintiff's Position:**

PMC agreed to Defendants' proposal that no party's designated materials should be sent outside the bounds of the United States, although there is no such prohibition in this District's model order. The Parties also agreed on an exception that would permit outside counsel of record to travel internationally with certain designated materials to the extent necessary for foreign depositions in this case. PMC proposed an additional reasonable and limited exception that would permit outside counsel of record to travel internationally with their personal electronic devices. Defendants' rejection of that additional exception would lead to absurd results. The Court should permit this exception.

Without such an exception, the risk of outside counsel of record inadvertently violating the protective order while abroad for work on another matter or for personal travel is so great as to effectively prohibit outside counsel of record from any international travel during the pendency of this case. For example, if PMC's outside litigation counsel were abroad taking a deposition in another case and receives a filed-under-seal exhibit by electronic mail from opposing counsel in this case (as has already occurred), PMC's outside counsel will be in violation of the protective order simply by virtue of having access to his or her electronic mail during that business trip. Of course, the same will be true when Defendants' outside counsel of record receive PMC's designated materials by electronic mail during the pendency of this case. The effect of Defendants'

proposal is to confine counsel of record to the territorial bounds of the United States during the pendency of this case, which is absurd and would prevent counsel from providing their other clients services.  Not to mention its chilling effect on family vacations.

Where even Defendants agree that designated materials may be taken abroad for depositions in this case, there is no heightened risk to Defendants from counsel of record travelling internationally with their personal electronic devices. The Court should order PMC's additional, limited exception.

**Defendants' Position:**

The parties appear to agree that protected materials should not be taken outside of the United States and that everyone permitted to receive protected materials in this case must comply with applicable export control laws.  Despite agreeing to this general rule, PMC proposes additional language that creates a potentially dangerous loophole by allowing outside counsel of record to take such materials outside of the United States on their personal devices.  PMC claims that, without this exception, its attorneys would be burdened by being unable to take their devices outside of the United States while, for example, on vacation or while traveling for other matters.  PMC has not articulated why it would be burdensome.  By way of example, attorneys might ensure that they either (a) remove any protected materials from their personal devices before traveling abroad or (b) simply not download such materials to their personal devices in the first place.  In any event, PMC cannot argue that its attorneys' convenience in travelling abroad justifies a loophole that contradicts the obligations under applicable export control laws.

This Court has regularly adopted export control provisions substantively identical to the one at issue here without any such carve-out.  *See, e.g.*, *Fujinomaki v. Google, Inc.*, No. 2:15-cv-1381-JRG-RSP, Dkt. 101, at § 5.C (E.D. Tex. Jan. 25, 2016); *Eolas Techs. Inc. v. Amazon.com,*

*Inc.*, No. 6:15-cv-1038-RWS, Dkt. 98, at ¶ 13 (E.D. Tex. May 5, 2016); *see also Data Engine*

*Techs. LLC v. Google Inc.*, No. 1:14-cv-1115, Dkt. 33 (D. Del. Apr. 8, 2015) (adopting Google's

provision prohibiting source code from being taken outside the United States because "source code

is entitled to stringent protection").   Such provisions make sense because if protected materials are

taken or sent to a foreign country, they will be outside of the Court's jurisdiction and the risk of

irreparable disclosure will be significantly increased.   Given this enhanced risk of irreparable

disclosure and because PMC fails to offer any compelling justification as to why its additional

provision is necessary, Defendants respectfully oppose PMC's requested addition.


Dated: August 1, 2019                                 Respectfully submitted,

                                        By: *Joseph S. Grinstein*
                                        Arun Subramanian
                                        New York Bar No. 4611869
                                        Tamar Lusztig
                                        New York Bar No. 5125174
                                        SUSMAN GODFREY L.L.P.
                                        1301 Avenue of the Americas, 32nd Fl.
                                        New York, NY 10019-6023
                                        Telephone: (212) 471-8346
                                        asubramanian@susmangodfrey.com
                                        tlusztig@susmangodfrey.com


                                        Joseph S. Grinstein
                                        Texas Bar No. 24002188
                                        J. Patrick Redmon
                                        Texas Bar No. 24110258
                                        SUSMAN GODFREY L.L.P.
                                        1000 Louisiana, Suite 5100
                                        Houston, TX 77002-5096
                                        Telephone: (713) 653-7820
                                        jgrinstein@susmangodfrey.com
                                        predmon@susmangodfrey.com


                                        S. Calvin Capshaw
                                        E. DeRieux

Texas Bar No. 03783900
CAPSHAW DERIEUX LLP
114 E. Commerce Avenue
Gladewater, TX 75647
Telephone: (903) 233-4826
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Dmitry Kheyfits
New York Bar No. 4743795
KHEYFITS P.C.
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (212) 203-5399
dkheyfits@kheyfits.com

**ATTORNEYS FOR
PERSONALIZED MEDIA
COMMUNICATIONS, LLC**

*/s/ Alyssa Caridis*
Jennifer H. Doan
Texas Bar No. 08809050
Kyle R. Akin
Texas Bar No. 24105422
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: kakin@haltomdoan.com

OF COUNSEL:

Clement Roberts
ORRICK HERRINGTON &
SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Phone: 415-773-5700
Email: croberts@orrick.com

Alyssa Caridis

14

ORRICK HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Phone: 213-629-2020
Email: acaridis@orrick.com

**ATTORNEYS FOR DEFENDANT
NETFLIX, INC.**


*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
David A. Perlson
davidperlson@quinnemanuel.com
Carl G. Anderson
carlanderson@quinnemanuel.com
Felipe Corredor
felipecorredor@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Mark Yeh-Kai Tung
marktung@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel : 650-801-5000
Fax: 650-801-5100

Nima Hefazi (pro hac vice)
nimahefazi@quinnemanuel.com
Miles D. Freeman
milesfreeman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

James Mark Mann

mark@themannfirm.com
Gregory Blake Thompson
blake@themannfirm.com
MANN TINDEL & THOMPSON
300 W. Main
Henderson, TX 75652
Tel: 903-657-8540
Fax: 903-657-6003

*Attorneys for Google LLC*

*/s/ G. Mark Edgarton*
Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
903.597.8311 (Telephone)
903.593.0846 (Facsimile)

OF COUNSEL:

Carlos Perez-Albuerne
G. Mark Edgarton
Sophie F. Wang
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000

**ATTORNEYS FOR AKAMAI
TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to

electronic service are being served with a copy of this document via ECF on August 1, 2019.

*/s/ Miles D. Freeman*
Miles D. Freeman