FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC<br><br>Plaintiff,<br><br>v. | |
| GOOGLE LLC. | Case No. 2:19-cv-90-JRG<br>LEAD CASE |
| AKAMAI TECHNOLOGIES, INC. | Case No. 2:19-cv-89-JRG |
| NETFLIX, INC.<br><br>Defendants. | Case No. 2:19-cv-91-JRG |

## PMC'S OPPOSITION TO AKAMAI'S MOTION TO DISMISS OR TRANSFER

# REDACTED

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF CONTENTS

I.    ARGUMENT ....................................................................................................2

    A.    Venue is Proper in the Eastern District of Texas .................................... 2

        1.    Akamai's Servers and Related Spaces Are Physical Places of Business ................................................................................. 4

        2.    Akamai's Servers in the District Are Regular and Established ............... 10

        3.    Akamai's Servers and Related Spaces Are "of Akamai" ........................ 11

        4.    The Court Should Not Revisit its *Seven Networks* Ruling ...................... 14

    B.    The Case Should Remain in the Eastern District of Texas ................................. 17

        1.    Judicial Economy Weighs Strongly Against Transfer Because the Eastern District Is Highly Familiar with PMC's Patents ................... 18

        2.    The Remaining Private Factors Are Neutral or Weigh Against Transfer ................................................................................. 22

            i.    Ease of Access to Sources of Proof Weighs Against Transfer ....................................................................... 23

            ii.    Cost of Attendance for Willing Witnesses Weighs Against Transfer ......................................................................... 24

            iii.    Time to Trial in This Court Is Much Faster Than in the District of Massachusetts ............................................................. 26

            iv.    The Local Interest in this Case Is Neutral .................................... 27

II.    CONCLUSION ...............................................................................................27

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agis Software Dev., LLC v. ZTE Corp.*,
   2018 WL 4854023 (E.D. Tex. 2018) ...................................................................................13

*Blackbird Tech LLC v. Cloudflare, Inc.*,
   No. CV 17-283, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ...................................................3

*CUPP Cybersecurity LLC v. Symantec Corp.*,
   U.S. Dist. LEXIS 37960 (N.D. Tex. Jan. 16, 2019) ........................................................15, 16

*First-Class Monitoring, LLC v. United Parcel Serv. Am., Inc.*,
   --- F. Supp. 3d ---, 2019 WL 3290123 ...................................................................................22

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
   353 U.S. 222 (1957)..................................................................................................................2

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
   867 F. Supp. 2d 859 (E.D. Tex. 2012)...................................................................................24

*Gemalto, S.A. v. HTC Corp.*,
   2011 U.S. Dist. LEXIS 133612 (E.D. Tex. Nov. 18, 2011) ...................................................26

*In re ASUS Computer Int'l*,
   573 F. App'x 928 (Fed. Cir. 2014) .......................................................................................18

*In re Cordis Corp.*,
   769 F.2d 733 (Fed. Cir. 1985)...............................................................................................15

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017)..................................................................................... *passim*

*In re Eli Lilly & Co.*,
   541 F. App'x 993 (Fed. Cir. 2013) .......................................................................................18

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) .......................................................................................17

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009)..............................................................................................26

*In re Google LLC*,
   2018 WL 5536478 (Fed. Cir. Oct. 29, 2018)........................................................................15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*In re Volkswagen AG (Volkswagen I)*,
    371 F.3d 201 (5th Cir. 2004) ..................................................................17, 18, 24

*In re Volkswagen of Am., Inc. (Volkswagen II)*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................17, 18

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018).............................................................................12

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
    2019 WL 2959568 (E.D. Tex. 2019) .....................................................................22

*Lonestar Invs., L.P. v. Sony Elecs., Inc.*,
    2011 WL 3880550 (E.D. Tex. Aug. 29, 2011) ......................................................26

*Monster Cable Prods., Inc. v. Trippe Mfg. Co.*,
    2008 WL 2492060 (E.D. Tex. June 18, 2008)........................................................26

*Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*,
    2018 WL 1478047 (S.D.N.Y. Mar. 26, 2018) ........................................................15

*Personal Audio, LLC v. Apple, Inc.*,
    2010 WL 582540 (E.D. Tex. Feb. 11, 2010) ..........................................................27

*Personal Audio, LLC v. Google, Inc.*,
    280 F. Supp. 3d 922 (E.D. Tex. 2017)....................................................................15

*Raytheon Co. v. Cray, Inc.*,
    258 F. Supp. 3d 781 (E.D. Tex. 2017), *mandamus granted on other grounds,*
    *order vacated sub nom. In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017)................3

*Seven Networks, LLC v. Google LLC*,
    315 F. Supp. 3d 933 (E.D. Tex. 2018).......................................................... *passim*

*Seven Networks, LLC v. Google (Seven Networks II)*,
    2018 WL 4026760 (E.D. Tex. Aug. 15, 2018) .................................................23, 24

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017)..............................................................................................2

*Uniloc USA, Inc. v. Samsung Elecs. Am.*,
    2018 U.S. Dist. LEXIS 176337 (E.D. Tex. Sept. 18, 2018) ..................................27

*Utterback v. Trustmark Nat'l Bank*,
    716 F. App'x 241 (5th Cir. 2017) ..........................................................................17

*WEB Telephony, LLC v. Comcast Corp.*,
    2010 WL 3860305 (E.D. Tex. Sept. 30, 2010) ......................................................25

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**Statutes**

28 U.S.C. § 1400(b) ...........................................................................................2, 14, 15, 17

28 U.S.C. § 1404(a) ................................................................................................17, 24

**Treatises**

Black's Law Dictionary (11th ed. 2019).......................................................................16

This Court held in *Seven Networks* that each of 9 Google servers and the space they occupied, placed with Internet Service Providers ("ISPs") in varying locations in the Eastern District of Texas, were physical places of business. *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 949 (E.D. Tex. 2018). Here, Akamai ███████████████████████████ ████████████████████████████. In *Seven Networks*, Google did not own or have exclusive rights to the cabinets its servers inhabited. Here, ████████████████████████ ████████████████████████. In *Seven Networks*, Google did not have exclusive use of the rooms in which its servers were located. Here, ████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████.

In short, the venue facts here go far beyond those in *Seven Networks*. Akamai ███████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████. The venue question in this case is not close. By any measure, Akamai has a regular and established physical place of business in the District.

Likewise, the District of Massachusetts is not a clearly more convenient venue for this dispute. Transfer to the District of Massachusetts would abandon this Court's extensive familiarity with PMC and its family of patents in favor of a court in which PMC has never appeared. PMC has filed no less than 9 complaints in this District since 2008. In at least 6 of those cases, PMC has presented technical tutorials to the Court on its patents and related technology. After familiarizing itself with patent specifications that are common to these patents-in-suit, the Court has construed

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

numerous terms that are likely to be relevant to claim construction in this case. Furthermore, the Court has ruled on the patentability of PMC's patents in at least 3 cases. As such, it would squander judicial economy to move this case out of this District. Moreover, the remaining transfer factors, including the location of witnesses and documents, are either neutral or weigh against transfer.

Akamai's motion to dismiss or transfer should be denied in full.

## I.   ARGUMENT

### A.   <u>Venue is Proper in the Eastern District of Texas</u>

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, <u>or</u> where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added); *see also TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("[Section] 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'") (*quoting Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). If, as here, a domestic corporation does not reside in the district the case is filed, venue is still proper if (1) it committed acts of infringement in the district and (2) has a regular and established place of business in the district when the cause of action accrued. *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

As to the first requirement, Akamai admits that: (1) ███████████████████████████████ ████████████████████████████████████████████████████████, Dec. of Todd Lawrence in Support of Akamai's Motion to Dismiss, Case No. 2:19-cv-0089-JRG, Dkt. 15-1, at 2; (2) ████████████████████████████████████████, Redmon Dec. Ex. 1 (30(b)(6) Deposition of Akamai Technologies, Inc., by Todd Lawrence) at 27:19–28:2; 42:12–43:2; 46:22–24; and (3) together ████████████████████████ ██████████████████████████████████████, *id.* at 110:10–16;

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

111:13–22. PMC's complaint alleges that Akamai has committed acts of infringement in this District through these servers. *See, e.g.*, Complaint ¶¶ 4, 44 ("Akamai communicates audio and video programming to subscribers <u>using its CDN</u>, including the Accused Akamai Products and Services . . . .") (emphasis added); *see also infra* pp. 4, 5, 13, 16 (Akamai's Eastern District of Texas servers comprise a portion of its content distribution network, or "CDN"). PMC also investigated and found that Akamai streams video from its servers at CyrusOne in this district. Compl. ¶ 11. ████████████████████████████████████████ ████████████████████████████████████████████████. Motion to Dismiss at 4; *see also Seven Networks*, 315 F. Supp. 3d at 943 ("[N]ot all of the alleged infringing activity needs to have occurred within the District so long as some act of infringement took place there.") (quoting *Blackbird Tech LLC v. Cloudflare, Inc.*, No. CV 17-283, 2017 WL 4543783, at *4 (D. Del. Oct. 11, 2017)); *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781, 788 (E.D. Tex. 2017) ("[C]ourts have consistently held that an allegation of infringement is itself sufficient to establish venue and the plaintiff is not required to demonstrate actual infringement by the defendant.") (quotations omitted), *mandamus granted on other grounds, order vacated sub nom. In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017). There is no serious dispute that PMC has sufficiently alleged that Akamai committed acts of infringement in this District.

As such, the only statutory venue question the Court needs to address is whether Akamai's ████████████████████████████████████████████████ in this District constitute a regular and established place of business.

The Federal Circuit has explained that a "regular and established place of business" sufficient to support venue is (1) a physical place of business; (2) regular and established; and (3) it is a place "of the defendant." *See In re Cray*, 871 F.3d at 1360. "In deciding whether a defendant

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

has a regular and established place of business in a district, no precise rule has been laid down and each case depends on its own facts." *Id.* at 1362. As explained in further detail below, Akamai's servers and the areas in the District it controls together easily meet the *In re Cray* elements, as already applied by this Court in *Seven Networks*. Akamai's motion to dismiss for improper venue should be denied.

### 1.     Akamai's Servers and Related Spaces Are Physical Places of Business

A physical place of business need not be a "fixed physical presence in the sense of a formal office or store." *In re Cray* at 1362 (quotations omitted). It must only "be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* This Court has already held that a physical server and its location that "actively service a distinct business need" of a defendant can be a physical place of business for the purposes of patent venue. *Seven Networks*, 315 F. Supp. 3d at 956.

█████████████████████████████████████████████████ are physical, geographical locations that actively service Akamai's business needs ███████████ ████████████████████████████████████████. Akamai explains the importance of a CDN as a "highly-distributed platform of servers that helps minimize delays in loading web page content by reducing the physical distance between the server and the user":

> Without a CDN, content origin servers must respond to every single end user request. This results in significant traffic to the origin and subsequent load, thereby increasing the chances for origin failure if the traffic spikes are exceedingly high or if the load is persistent.
>
> By responding to end user requests in place of the origin and in closer physical and network proximity to the end user, a CDN offloads traffic from content servers and improves the web experience, thus benefitting both the content provider and its end users.

. . . .

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

> A CDN provider is a vendor that provides businesses the ability to serve their content to end users across the world over a content delivery network. At Akamai, we take pride in being the world's leading CDN provider.

Redmon Dec. Ex. 2 ("What does CDN stand for and how does it work?") at 1, 3; *see also*

*Seven Networks*, 315 F. Supp. 3d at 957 (servers may "function as local data warehouses, much

like a shoe manufacturer might have warehouses around the country"). █████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████. Ex. 1 at 111:19–113:22.

As a threshold matter, like Google in *Seven Networks*, ███████████████████████

██████████████████████████████████. *Seven Networks*, 315 F. Supp. 3d at

951. ██████████████████████████████████████████████████. Ex. 1 at

70:7–71:1. ████████████████████████████████████████████████

████████████████████████████████████████████. *Id.* at 90:18–91:22.

██████████████████████████████████████████████████████████

███. *Id.* at 89:1–21. ████████████████████████████████████████

██████████████████████████████████████. *Id.* at 23:10–24:4.

A <u>physical</u> place of business need not be a "fixed physical presence in the sense of a formal

office or store." *In re Cray* at 1362 (quotations omitted). It must only "be a physical, geographical

location in the district from which the business of the defendant is carried out." *Id.* ███████████

██████████████████████████████████████████████████████████████████

are "more than merely a virtual space or electronic communications from one person to another."

*Seven Networks*, 315 F. Supp. 3d at 951 (quoting *In re Cray*). ████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

█████████████████████████████████████████████ *Id.* ███████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████ ; *infra* pp. 7–10.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Despite all of this,

Motion to Dismiss at 13–14.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER



Analogous concepts are not uncommon in leases for commercial real estate,

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

including restrictions on "changes [that] will probably have a direct impact on the balance of the property that the tenant is not leasing." *See* Redmon Dec. Ex. 8 (1 Commercial Real Estate Leasing § 19:1 (2d ed.)) (discussing clauses restricting the right of a tenant to make alterations); *see also* Redmon Dec. Ex. 9 (1 Commercial Real Estate Leasing § 11:1 (2d ed.)) (discussing clauses restricting use of a leased property). ███████████████████████████████████

███████████████████████████████████████████████████████

███████ *Cf. Seven Networks*, 315 F. Supp. 3d at 951–52 (finding that "Google's GGC servers are housed in spaces leased by Google" despite the agreement being styled as a "service agreement").

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

In *Seven Networks*, this Court held that Google's rigorous control over its GGC servers and the ISP facilities in which they were stored in the District—for example, specific requirements with respect to "rack space, power, [and] network interfaces" or requirements to return equipment to Google—demonstrated "the installation of Google's own servers in a physical space *that becomes Google's*." 315 F. Supp. 3d at 952 (emphasis in original). ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████ "there is a physical place which this Court may examine to determine if it is a regular and established place of business and whether it is a place of the defendant." *Id.* at 953 (citing *In re Cray*, 871 F.3d at 1362).

### 2.    Akamai's Servers in the District Are Regular and Established

The Federal Circuit has explained that a "regular" place of business is "operate[d] in a "steady, uniform, orderly, and methodical" manner[.]" *In re Cray*, 871 F. 3d at 1362 (citations and alterations omitted). In other words, a business is "regular" if it is not "sporadic," like "a series of [business] acts" is not sporadic. *Id.* (emphasis added). A business is "established" where it is "settled certainly, or fixed permanently." *Id.* at 1363 (citations and alterations omitted). For example, "a five-year continuous presence in the district demonstrates that the business was established for purposes of venue." *Id.*

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

10

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████ even "a month-to-month agreement which has endured for years is clearly 'regular and established.'" *Seven Networks*, 315 F. Supp. 3d at 957.

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

### 3.      Akamai's Servers and Related Spaces Are "of Akamai"

A defendant must "establish or ratify the place of business" in order for it to be a place "of the defendant." *In re Cray*, 871 F.3d at 1363. In determining whether a place of business is a place "of the defendant," a court should consider whether the defendant "exercises . . . attributes of possession or control over the place." *Id.* A defendant's sufficient possession or control over the place may be shown through, for example, "a defendant's representations that it has a place of

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

business in the district[,]" by a defendant's "list[ing] the alleged place of business on a website[,]" or a defendant's "[m]arketing or advertisements" which "indicate that the defendant itself holds out [the] place for its business." *Id.* The Federal Circuit has also instructed courts to consider whether a defendant "itself possesses, owns, leases, or rents the office space for the [place of business] or owns any of the equipment located there." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018).



*cf. Fractus, S.A. v. ZTE Corp.*, No. 2:17-CV-00561-JRG, Dkt. 104 Order Granting Motion to Transfer for Improper Venue

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

at 4 (E.D. Tex. Sept. 28, 2018) ("The Court finds that the presence of two employees, who only work at the facility on a part-time basis and in *visitor office space*, is insufficient on its own to convert the iQor call center to a place of business of ZTE. First, the designated space for the two employees is not *exclusively used for ZTE*; . . . .").

Indeed, Akamai bills itself as the "world's leading provider of CDNs." Ex. 2 at 3.

The third-party call-center cases Akamai cites—*Fractus, S.A. v. ZTE* and *Agis Software Dev., LLC v. ZTE Corp.*, 2018 WL 4854023 (E.D. Tex. 2018)—are a poor fit for the facts here. In those cases, ZTE completely outsourced its customer support function to a third party and had only two part-time employees who worked there three times a week from visiting offices. *See Fractus,*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*S.A.*, No. 2:17-CV-00561-JRG, Dkt. 104 at 3–9. Here, by contrast, ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

This case is more akin to *Seven Networks.* As the ISPs in *Seven Networks* purported to do for Google, ███████████████████████████████████████

█████████████, *with* 315 F. Supp. 3d at 965. And like Google did in *Seven Networks*,

███████████████████████████████████████████████

████████████████████████ *See id.* at 961 n.43.[4] Yet, "there is little doubt that both the server and the physical location at which it resides is under the exclusive control ██████████." *Id.*

Finally, ██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ "the 'place' of the 'place of business' is not the room or building of the ISP but rather ████████ server and the space wherein it is located." *Id.*

### 4.    The Court Should Not Revisit its *Seven Networks* Ruling

As explained above, Akamai's servers and related spaces meet the statutory requirements for patent venue under § 1400(b). The Federal Circuit has cautioned that patent venue "analysis must be closely tied to the language of the statute." *In re Cray*, 871 F.3d at 1362. Akamai

---

[4] "Google cannot argue that it both does business at and through servers in its data centers while plausibly maintaining that servers themselves cannot be places of business." *Seven Networks*, 315 F. Supp. 3d at 9 n.43. ████████████████████████████████████
████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

nonetheless suggests that this Court's holding in *Seven Networks* is incorrect regarding the nature of a "place" of business. Federal Circuit venue jurisprudence supports the *Seven Networks* holding. *See In re Cray*, 871 F.3d at 1362 (a "place" of business need only be a "physical, geographical location"); *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) ("[T]he appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not as Cordis argues, whether it has a fixed physical presence[.]"). The Federal Circuit has never held that a server combined with the specific space in which it is installed cannot be a "place" of business.

Akamai instead suggests the Court should follow *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017). Motion to Dismiss at 13, 17. Akamai would have the Court adopt a bright-line rule that servers and the spaces in which they are located can never be places of business under § 1400(b). But this Court has already explained that "neither the statute nor the Federal Circuit's guidance in *In re Cray* permit the result reached by" the court in *Personal Audio*. *Seven Networks*, 315 F. Supp. 3d at 950. Akamai's suggested bright-line rule is also inconsistent with controlling Federal Circuit precedent that "no precise rule has been laid down and each case depends on its own facts." *In re Cray*, 871 F.3d at 1362. Indeed, the Federal Circuit declined to overturn this Court's decision in *Seven Networks*, *see In re Google LLC*, 2018 WL 5536478, at *3–4 (Fed. Cir. Oct. 29, 2018), suggesting it is not erroneous as Akamai claims.[5]

---

[5] Akamai half-heartedly cites nonbinding cases that break with *Seven Networks*. Motion to Dismiss at 16. Even without *Seven Networks*, those cases are easily distinguished. *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, is plainly inapposite—                                          2018 WL 1478047, at *3 (S.D.N.Y. Mar. 26, 2018). And that case turned not on the "shelf" but on the lack of any agents of defendant in the district doing business from that location. *Id.* at *4.
                                                                        And in *CUPP Cybersecurity LLC v. Symantec Corp.*, the court considered only Symantec's servers—

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Akamai, while acknowledging this Court's contrary decision in *Seven Networks*, argues that "computer equipment does not constitute a place of business." Motion to Dismiss at 13. But as this Court correctly reasoned in that decision, installed servers are not just equipment. *See, e.g.*, 315 F. Supp. 3d 939 n.5 (a server, once installed for use, is a place because it is a "particular portion of space, considered as separate and distinct from the rest of space; a particular locality, spot, or site; position" (citations omitted)). ██████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ Installation to a fixed place makes them akin to "fixtures"—which, because they are "attached," are "regarded as an irremovable part of the real property" and can be contrasted with "equipment" or "chattel," which is not "attached." Redmon Dec. Ex. 17 (Black's Law Dictionary (11th ed. 2019), fixture); *see also Seven Networks*, 315 F. Supp. 3d at 952 ("Once installed, it is considered a permanent fixture."). Akamai does not present a close case ████████

███████████████████████████████████████████████████████████

███████████████████████████████████ At bottom, Akamai suggests that this Court's *Seven Networks* decision leads to limitless venue that would distort the intended scope of the patent venue statute. *See* Motion to Dismiss at 2. That argument is not persuasive, because ultimately the outcome of each case will depend on its specific facts.

"[T]he venue statute is 'designed to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.'" *Seven Networks*, 315 F. Supp. 3d at 945

---

████████████████████████████████████████████. U.S. Dist. LEXIS 37960, at *8-9 (N.D. Tex. Jan. 16, 2019).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

(quoting *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 244 (5th Cir. 2017)). There is

nothing unfair or inconvenient about requiring Akamai to answer suit here. Akamai, a large,

multinational company, chose to serve its customers —including the citizens

of this District. ████████████████████████████ meet the statutory

requirement of a regular and established place of business under § 1400(b). Venue is proper and

Akamai's motion to dismiss should be denied.

## B.    The Case Should Remain in the Eastern District of Texas

A defendant seeking to transfer venue bears the burden to show that its proposed venue is

clearly more convenient than the original venue. Otherwise the plaintiff's choice of venue must be

respected. *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008).

Whether venue transfer is appropriate under 28 U.S.C. § 1404(a) requires consideration of both

private and public interest factors. *Id.* The factors are to be evaluated "based on the situation which

existed when suit was instituted." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013)

(quotations omitted).

The private interest factors established by the Fifth Circuit include: "(1) the relative ease

of access to sources of proof; (2) the availability of compulsory process to secure the attendance

of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems

that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315

(quoting *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004)). Public interest

factors to be considered are: "(1) the administrative difficulties flowing from court congestion; (2)

the local interest in having localized interests decided at home; (3) the familiarity of the forum

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* at 315 (quoting *Volkswagen I*, 371 F.3d at 203). Considering the relevant factors in this case demonstrates that Akamai's motion to transfer should be denied.

### 1.    Judicial Economy Weighs Strongly Against Transfer Because the Eastern District Is Highly Familiar with PMC's Patents

In evaluating the judicial economy of transfer, the Federal Circuit has held that courts may properly consider the familiarity of both the transferor and transferee venues with the patents at issue and related technology:

> After carefully reviewing the Central District of California's prior cases involving the same family of patents at issue here, the district court concluded that "gains to judicial efficiency in this case would likely be substantial." That conclusion was based on the fact that the same trial judge in the Central District of California has already conducted discovery, claim construction, and ruled on motions for summary judgment involving the same family of patents, and was thus already greatly familiar with the technology and patent specification in the present case.
>
> . . . .
>
> Deference is particularly appropriate in the present case given the Central District of California's prior familiarity with the patents and opportunity to resolve two cases involving the same product and patents.

*In re Eli Lilly & Co.*, 541 F. App'x 993, 994 (Fed. Cir. 2013); *see also In re ASUS Computer Int'l*, 573 F. App'x 928, 929 (Fed. Cir. 2014) (denying mandamus where judicial economy and sources of proof disfavored transfer despite the transferee venue being otherwise slightly more convenient).

This is not PMC's first case before this Court—the Court is highly familiar with PMC's family of patents,[6] and PMC has repeatedly enforced its patents in different cases before this Court:

---

[6] Although the patents-in-suit in this case are not identical to those asserted in past PMC cases, all the patents-in-suit, (U.S. Patent Nos. 7,769,344 (the "'344 Patent"), 7,865,920 (the "'920 Patent"), 8,601,528 (the "'528 Patent"), 8,739,241 (the "'241 Patent"), and 9,674,560 (the "'560 Patent")) stem from the same common applications and claim priority from those prior applications. *See* U.S. Patent No. 9,674,560 ("Continuation of application No. 08/113,329, filed on Aug. 30, 1993,

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

- *PMC v. TCL Corp.*, 2:17-cv-00433-JRG;

- *PMC v. Hisense Co.*, 2:17-cv-00437-JRG-RSP;

- *PMC v. Tsinghua Tongfang Co.*, 2:17-cv-00439-JRG;

- *PMC v. Haier Am. Co.*, 2:17-cv-00438-JRG;

- *PMC v. Funai Elec. Co.*, 2:16-cv-00105-JRG-RSP;

- *PMC v. Samsung Elecs. Am., Inc.*, 2:15-cv-01754-JRG-RSP;

- *PMC v. Apple, Inc.*, 2:15-cv-01366-JRG-RSP;

- *PMC v. Zynga, Inc.*, 2:12-cv-00068-JRG-RSP;  and

- *PMC v. Motorola, Inc.*, 2:08-cv-00070-RSP.

In contrast, the District of Massachusetts has never adjudicated PMC's patents.

In at least six of these cases, PMC and its opponents have presented technical tutorials to the Court regarding PMC's family of patents and related technologies. *See* Redmon Dec. Ex. 18 (*PMC v. TCL* Tech Tutorial); Redmon Dec. Ex. 19 (*PMC v. Hisense* Tech Tutorial); Redmon Dec. Ex. 20 (*PMC v. Funai* Tech Tutorial); Redmon Dec. Ex. 21 (*PMC v. Samsung* Tech Tutorial; Redmon Dec. Ex. 22 (*PMC v. Apple* Tech Tutorial); Redmon Dec. Ex. 23 (*PMC v. Zynga* Tech Tutorial).

---

now Pat. No. 7,856,650, which is a continuation of application No. 08/056,501, filed on May 3, 1993, now Pat. No. 5,335,277, which is a continuation of application No. 07/849,226, filed on Mar. 10 1992, now Pat. No. 5,233,654, which is a continuation of application No. 07/588,126, filed on Sep. 25, 1990, now Pat. No. 5,109,414, which is a continuation of application No. 07/096,096, filed on Sep. 11, 1987, now Pat. No. 4,965,825, which is a continuation-in-part of application No. 06/829,531, filed on Feb. 14, 1986, now Pat. No. 4,704,725, which is a continuation of application No. 06/317,510, filed on Nov. 3, 1981, now Pat. No. 4,694,490); U.S. Patent No. 8,739,241 (same); U.S. Patent No. 8,601,528 (same); 7,865,920 (same except Patent No. 7,856,650 had not yet been issued); 7,769,344 (same except Patent No. 7,856,650 had not yet been issued). Patent No. 7,747,217 (the "'217 Patent"), discussed *infra* 21, though not asserted against Akamai, shares this common parentage. *See* U.S. Patent No. 7,747,217  (same as others listed but Patent No. 7,856,650 had not yet been issued.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

The Court has also construed terms in the same patent family that appear in asserted claims

in this case.  By way of examples, the Court has construed:

- **"video"[7] and "video image"[8]:**
  - *PMC v. Zynga, Inc.*, 2013 WL 4630447, at *6–8 (E.D. Tex. Aug. 28, 2013) (Payne, Mag. J.), Redmon Dec. Ex. 25.

- **"programming"[9]:**
  - *PMC v. Zynga, Inc.*, 2013 WL 4630447, at *9–12 (E.D. Tex. Aug. 28, 2013), Ex. 25;
  - *PMC v. Apple, Inc.*, 2016 WL 6299860 (E.D. Tex. Oct. 26, 2016) (Payne, Mag. J.) (construing for purposes of Phase Two disputes and for the *Samsung* case), Redmon Dec. Ex. 26;
  - *PMC v. Apple, Inc.*, 2016 WL 6247054, at *15–17 (E.D. Tex. Oct. 25, 2016) (Payne, Mag. J.), Redmon Dec. Ex. 27.

- **"processor"[10]:**
  - *PMC v. Zynga, Inc.*, 2013 WL 4630447, at *7–9, Ex. 25;
  - *PMC v. Apple, Inc.*, 2016 WL 6247054, at *28–30, Ex. 27.

- **"control signal"[11]:**
  - *PMC v. Apple, Inc.*, 2016 WL 6299860, at *45–46, Ex. 26.

- **"decrypting"[12]:**
  - *PMC v. Apple, Inc.*, 2016 WL 6247054, at *6–10, Ex. 27.

- **"controllable device"[13]:**
  - *PMC v. Apple, Inc.*, 2016 WL 6247054, at *30–31, Ex. 27.

The Court has also addressed the patentability of the related '217 Patent, and other related

patents in PMC's patent family, *see supra* 18 n.6:

- *PMC v. Funai Elec. Co.*, 2017 WL 957719, at *2 (Feb. 22, 2017) (recommending denial of § 101 challenge to the '217 Patent because "the ['217 Patent's] claims are

---

[7] All asserted claims of the '344 Patent; claims 7 and 12 of the '920 Patent.

[8] Claim 36 of the '241 Patent.

[9] All asserted claims of the '344 Patent; all asserted claims of the '920 Patent; all asserted claims of the '528 Patent; all asserted claims of the '241 Patent; all asserted claims of the '560 Patent.

[10] All asserted of the '344 Patent; all asserted claims of the '528 Patent.

[11] Claim 32 of the '528 Patent (and dependents by implication); all asserted claims of the '241 Patent; and all claims of the '560 Patent.

[12] Claim 17 of the '241 Patent.

[13] Claim 30 of the '241 Patent (and dependents by implication).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

directed to a specific improvement in modern technology and not to an abstract idea" as well as denying abstractness challenges to other PMC digital signal processing patents), Redmon Dec. Ex. 29, *adopted by* 2017 WL 951860 (Mar. 10, 2017) (Gilstrap, J.), Redmon Dec. Ex. 30;

- *PMC v. Samsung Elecs. Am., Inc.*, 2016 WL 9240544, at *2–12 (Sept. 21, 2016) (Payne, Mag. J.) (recommending denial of §101 challenge to the '217 Patent and other digital signal processing patents) Redmon Dec. Ex. 31, *adopted by* 2016 WL 9274742 (E.D. Tex. Sept. 29, 2016) (Gilstrap, J.), Redmon Dec. Ex. 32; and

- *PMC v. Apple*, 2016 WL 5719701, at *4–11 (E.D. Tex. Sept. 13, 2016) (Payne, Mag. J.) (recommending denial of § 101 challenge to other members of the PMC patent family addressing digital signal processing), Redmon Dec. Ex. 33, *adopted by* 2016 WL 5475798 (E.D. Tex. Sept. 29, 2016) (Gilstrap, J.), Redmon Dec. Ex. 34.

Finally, the Court has analyzed a license between PMC and Rovi Corporation (the "Rovi license"), which was extensively litigated both in this Court and the Federal Circuit before the issue was resolved in arbitration and then confirmed by this Court. *PMC v. Echostar Corp., Inc.*, 2:08-cv-00070-RSP, Dkt. 419 (Jan. 10, 2014) (Payne, Mag. J.) (Redmon Dec. Ex. 35), *adopted by* Dkt. 428 (Aug. 12, 2014) (Gilstrap, J.) (Redmon Dec. Ex. 36), *vacated and remanded sub nom. PMC v. Rovi Guides, Inc.*, 635 F. App'x 909 (Fed. Cir. 2015), *considered on remand sub nom. PMC v. Echostar Corp.*, 2016 WL 7665429 (E.D. Tex. June 29, 2016) (Payne, Mag. J.) (Redmon Dec. Ex. 37). This Court's familiarity with the Rovi license will become relevant if a dispute about the coverage of the Rovi license arises.

Separately, the Court may also consider the judicial economy to be achieved in light of PMC's other cases before it now (*PMC v. Google LLC*, 2:19-cv-00090-JRG and *PMC v. Netflix*, 2:19-cv-00091-JRG). A court should not "weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits, while the remaining defendants have similar motions pending seeking transfer to a common transferee district." *In re Google*, 2017 WL 977038, at *3 (Fed. Cir. 2017) (emphasis added). But this is not a bright-line rule. A court may

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

consider it as a factor among others, so long as "the decision to decline transferring this case does not depend <u>solely</u> on the existence of multiple co-pending suits, but on the court's conclusion regarding all the public and private factors." *CXT Sys., Inc. v. Container Store, Inc.*, 2019 WL 1506015, at *4 (E.D. Tex. Apr. 5, 2019) (emphasis added). The consolidated defendants' motions seek <u>different</u> transferee districts, where Netflix seeks the Northern District of California, Akamai seeks the District of Massachusetts, and Google has not filed a § 1404 motion. Denial of Akamai's and Netflix's motions to transfer would prevent duplicative and potentially conflicting adjudications. Together with the court's high degree of familiarity with PMC's patents, the co-pending suits heighten the judicial economy to be achieved by denying transfer.

This Court's familiarity with PMC's patents is unmatched. The District of Massachusetts has no familiarity with them. This factor weighs strongly against transfer.

## 2. The Remaining Private Factors Are Neutral or Weigh Against Transfer

In this case, certain factors need not be considered in weighing the convenience of the transferee district. Akamai has waived numerous arguments by failing to raise them in its opening brief. "It is black-letter law that <u>arguments</u> raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'" *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 2959568, at *3 (E.D. Tex. 2019) (emphasis added); *see also First-Class Monitoring, LLC v. United Parcel Serv. Am., Inc.*, --- F. Supp. 3d ---, 2019 WL 3290123, at *10 ("But not having raised the issue in its opening brief, FCM has waived that argument."). Akamai carries the burden on a motion to transfer for improper venue, and failed to carry that burden in its opening brief.

In its opening brief, Akamai failed to address judicial economy and other practical problems that make trial in this District easy, expeditious, and inexpensive; the availability of

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

compulsory process; cost of attendance for third-party witnesses, and administrative difficulties flowing from court congestion. Akamai gestures vaguely towards other arguments, but does not lodge them with sufficient specificity to carry its burden. For instance, Akamai flatly asserts that it employs numerous employees in Massachusetts, but does not identify a single relevant employee in its opening brief. And Akamai's initial disclosures belie its claim that there are many relevant witnesses in Massachusetts: Akamai identified only two of its employees as potential witnesses with relevant knowledge (one of whom appears to reside outside the District of Massachusetts), and no other relevant Massachusetts witnesses. Redmon Dec. Ex. 38 (Akamai Initial Disclosures) at 9; Ex. 39 (LexisNexis Public Record Results for Christopher R. Knox).

Akamai bears the burden of showing the District of Massachusetts is clearly more convenient, and failed to meet that burden in its Motion. Its motion to transfer should be denied.

i.      Ease of Access to Sources of Proof Weighs Against Transfer

As an initial matter, Akamai fails to identify with any specificity what evidence is available at its headquarters in Massachusetts. Akamai states without more that it maintains relevant records in Massachusetts. Motion to Dismiss at 23. That is not enough, because "[p]arties must specifically identify the relevant sources of proof (and why they are relevant), and specifically identify the physical location of those sources of proof. Without doing so, no court is able to make an informed inquiry into the true convenience of the parties." *Seven Networks, LLC v. Google (Seven Networks II)*, 2018 WL 4026760, at *4 (E.D. Tex. Aug. 15, 2018). Akamai failed to argue this issue with the requisite specificity and therefore fails to meet its burden to show the transferee venue is clearly more convenient.

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ although he had vaguely asserted in his declaration that Akamai maintained relevant documents at its Massachusetts

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

headquarters, Lawrence Dec. ¶ 3, No. 2:19-cv-0089-JRG, Dkt. 15-1. But it is not enough that Akamai accesses its records from Massachusetts, they must be physically stored there to weigh in favor of transfer. *See Seven Networks II*, 2018 WL 4026760,. at *2 (rejecting consideration of records managed from the transferee district but that were stored elsewhere).

PMC, however, keeps all of its corporate records in Texas. PMC stores copies of relevant patent licenses, settlement agreements, and documents relevant to the conception and reduction to practice of the patents in suit, as well as other documents relevant to patent licensing negotiation, prosecution, and re-examination at its office in Sugar Land, Texas. King Dec. ¶ 5. PMC keeps other relevant documents and physical evidence in two locations in Houston. *Id.* ¶ 4, 6–7. First, PMC keeps original copies of many historical documents in a storage facility in Houston. *Id.* ¶ 6. Second, PMC's outside counsel currently stores the original prototype for PMC's technology at its Houston office, as well as certified copies of PMC patents. *Id.* ¶ 7.

The availability of evidence weighs against transfer because <u>all</u> of PMC's relevant evidence is located in Texas, whereas Akamai failed to identify any documents located in the District of Massachusetts.

ii.  Cost of Attendance for Willing Witnesses Weighs Against Transfer

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. In considering the convenience of willing witnesses, "the convenience of non-party witnesses, rather than of party witnesses . . . is more important and accorded greater weight." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

PMC has identified two Akamai witnesses in Texas who may possess knowledge relating to Akamai's infringement of the patents-in-suit. *See* Redmon Dec. Ex. 40 (PMC Initial Disclosures to Akamai) at 3. Sathis Narayanan, located in the Dallas/Fort Worth area, is a Senior Manager for the Product Specialist Group at Akamai and has worked on implementing CDN solutions of Akamai customers. Redmon Dec. Ex. 41 (LinkedIn Profile for Sathis Narayanan); Ex. 40 at 3. Sanjay Sharma, also located in the Dallas/Fort Worth area, is an Engagement Manager for video delivery at Akamai, working directly with Akamai's customers to deliver video on demand and live television through Akamai's CDN. Redmon Dec. Ex. 42 (LinkedIn Profile for Sanjay Sharma); Ex. 40 at 3. And PMC's Timothy Dorney lives and works in Plano, in the Eastern District of Texas. Ex. 40 at 3; King Dec. at ¶ 9. Other relevant PMC witnesses are also located in Texas, far closer to this District than Massachusetts. Mark King lives in Sugar Land, Texas, and works from PMC's headquarters there. Ex. 40 at 3; King Dec. at ¶ 8. In its Initial Disclosures, Akamai itself identifies relevant Texas PMC witnesses, including Aaric Eisenstein, who lives and works in Austin, Texas. Ex. 38 at 8; King Dec. at ¶ 10.

Conversely, Akamai identifies only two of its own witnesses in its Initial Disclosures and does not identify where either is located. Ex. 38 at 9. Public records suggest that at least one of the witnesses, Mr. Christopher "Kit" Knox, lives in San Diego, closer to Marshall, Texas, than Massachusetts. Ex. 39. Akamai identifies no third-party witnesses, whether in this District or in Massachusetts. Ex. 38 at 7–9. To the extent that one or both of Akamai's witnesses are located in Massachusetts, PMC offers to preserve their testimony through video deposition taken in Massachusetts, mitigating any inconvenience. *See WEB Telephony, LLC v. Comcast Corp.*, 2010 WL 3860305, at *4 (E.D. Tex. Sept. 30, 2010) ("[T]o the extent that any party wishes to call a witness who is substantially inconvenienced by the trial location, the availability of videotaped

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

depositions mitigates the cost and potential prejudice associated with that inconvenience."); *Monster Cable Prods., Inc. v. Trippe Mfg. Co.*, 2008 WL 2492060, at *3 (E.D. Tex. June 18, 2008) ("In any case, with modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated.").

Given Akamai's failure to identify any witnesses in its opening brief, that party witnesses are to be discounted, and many identified witnesses are in Texas, this factor weighs against transfer.

       iii.    Time to Trial in This Court Is Much Faster Than in the District of Massachusetts

In considering administrative difficulties from court congestion, the relevant inquiry is "the speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Every measure available shows that time to trial will be faster in the Eastern District of Texas than the District of Massachusetts. First, Table C-5 of the Federal Judicial Caseload Statistics for the period ending March 31, 2019 shows that the time to trial in the District of Massachusetts is much longer than in this Court, where the District of Massachusetts median was 36.4 months to trial, and this Court's median was only 27 months, a difference of over 9 months. Redmon Dec. Ex. 43 (Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics) (Mar. 31, 2019), https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2019/03/31.

Courts in this District have also considered time to trial specific to patent cases. *Gemalto, S.A. v. HTC Corp.*, 2011 U.S. Dist. LEXIS 133612, at *23 (E.D. Tex. Nov. 18, 2011) (considering statistics showing "that the time from the filing of a patent case to termination by a jury verdict is faster in the Eastern District of Texas"); *Lonestar Invs., L.P. v. Sony Elecs., Inc.*, 2011 WL 3880550, at *6 (E.D. Tex. Aug. 29, 2011) (considering both median time to trial for all cases and

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

average time to trial for patent cases). In the District of Massachusetts, the average time to trial for

a patent case is 3.5 years. This Court averages 2.2 years for patent cases. *See* Redmon Dec. Ex. 44

(PWC 2018 Patent Litigation Study) at 14. In addition, were this case to be transferred, the time

to trial would be essentially reset: "[I]t is the Court's sense of things that a transferred case

essentially starts over in the transferee district and the time spent in the originating district is

substantially lost as regards time to trial, since the transferred case is unavoidably back in that

court's existing queue of current trial settings." *Uniloc USA, Inc. v. Samsung Elecs. Am.*, 2018

U.S. Dist. LEXIS 176337, at *21 (E.D. Tex. Sept. 18, 2018). Where PMC currently has a trial date

in this Court of September 14, 2020, Dkt. No. 77, at 1., and the parties could not expect a trial in

the District of Massachusetts for at least three years from the date of transfer, this factor weighs

against transfer.

iv.      The Local Interest in this Case Is Neutral

While it is true that Akamai has its headquarters in the District of Massachusetts, PMC is

itself organized in Texas and based in Sugar Land, Texas, a few hours' drive from the U.S. District

Court in Marshall. King Decl. ¶ 3. PMC also has an employee and witness who lives in the Eastern

District, Timothy Dorney. *Id.* ¶ 9. Texas citizens have an interest in deciding the facts relating to

the enforcement of the patents of a Texas LLC with its principal place of business in Texas. *See*

*Personal Audio, LLC v. Apple, Inc.*, 2010 WL 582540, at *6 (E.D. Tex. Feb. 11, 2010). Because

both Texas and Massachusetts have competing interests in deciding this case, this factor is neutral.

## II.    CONCLUSION

For the reasons stated above, PMC respectfully requests the Court deny Akamai's motion

to dismiss or transfer.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated: August 16, 2019

Respectfully submitted,

By: *Joseph S. Grinstein*

Arun Subramanian
New York Bar No. 4611869
Tamar Lusztig
New York Bar No. 5125174
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019-6023
Telephone: (212) 471-8346
asubramanian@susmangodfrey.com
tlusztig@susmangodfrey.com

Joseph S. Grinstein
Texas Bar No. 24002188
J. Patrick Redmon
Texas Bar No. 24110258
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 653-7820
jgrinstein@susmangodfrey.com
predmon@susmangodfrey.com

S. Calvin Capshaw
Texas Bar No. 03783900
CAPSHAW DERIEUX LLP
114 E. Commerce Avenue
Gladewater, TX 75647
Telephone: (903) 233-4826
ccapshaw@capshawlaw.com

Dmitry Kheyfits
KHEYFITS BELENKY LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 429-1739
dkheyfits@kblit.com

Andrey Belenky
KHEYFITS BELENKY LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Telephone: (212) 203-5399
Email: abelenky@kblit.com

*Attorneys for Personalized Media
Communications, LLC*

## Certificate of Service

I certify that on August 16, 2019, I electronically served the foregoing on all counsel of record via secure file transfer.

*/s/ J. Patrick Redmon*
J. Patrick Redmon

## Certificate of Authorization to File Under Seal

I hereby certify that this document is being filed under seal pursuant to the Court's authorization in the Protective Order entered in this matter.

*/s/ J. Patrick Redmon*
J. Patrick Redmon