**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **PERSONALIZED MEDIA COMMUNICATIONS, LLC,**<br><br>  Plaintiff,<br><br>  v.<br><br>**GOOGLE LLC,**<br><br>  Defendant. | Civil Action No. 2:19-cv-00090-JRG<br><br>JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER |

**DEFENDANT GOOGLE LLC'S OPENING SUPPLEMENTAL BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS FOR IMPROPER VENUE**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I. *GOOGLE* REQUIRES AN EMPLOYEE OR AGENT TO BE PHYSICALLY AND REGULARLY PRESENT AT THE ALLEGED PLACE OF BUSINESS ................................ 1

II. THE EXISTENCE OF A QUALIFYING AGENCY RELATIONSHIP IS AN ISSUE OF STATUTORY CONSTRUCTION GOVERNED BY FEDERAL CIRCUIT LAW ................ 4

III. THERE ARE NO GOOGLE EMPLOYEES OR AGENTS THAT ARE PHYSICALLY AND REGULARLY PRESENT AND CONDUCTING GOOGLE'S BUSINESS AT ANY ALLEGED PLACE OF BUSINESS .................................................................................. 6

    A. The Federal Circuit Has Held that the GGC Servers Cannot Be a Regular and Established Place of Business of Google .................................................................................. 6

    B. No Google Employees or Agents Are Regularly and Physically Present and Conducting Google's Business ████████████████████████████ .............................. 7

    C. ████████████ Is Not a Regular and Established Place of Google's Business ................ 10

IV. UNDER CURRENT LAW AND TECHNOLOGY A MACHINE CANNOT BE AN "AGENT" AND IN ANY EVENT NOT UNDER THE CIRCUMSTANCES PRESENT HERE .................................................................................................................................. 13

V. CONCLUSION ....................................................................................................................... 15

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# TABLE OF AUTHORITIES

**Page**

## Cases

*Christiana Trust v. Riddle*,
    911 F.3d 799 (5th Cir. 2018) ................................................................................. 12

*Envtl. Defense v. Duke Energy Corp.*,
    549 U.S. 561 (2007) ................................................................................................ 5

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2018) ............................................................................ 2, 4

*In re Google LLC*,
    No. 2019-126, 2020 WL 728165 (Fed. Cir. Feb. 13, 2020) ............................ passim

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018) ..................................................................... 4, 6, 11

*Jackson v. Caribbean Cruise Line, Inc.*,
    88 F. Supp. 3d 129 (E.D.N.Y. 2015) ..................................................................... 13

*McLaughlin v. Seafood, Inc.*,
    861 F.2d 450 (5th Cir. 1988) ................................................................................... 5

*Meyer v. Holley*,
    537 U.S. 280 (2003) ............................................................................................ 2, 5

*Pac. Gas & Elec. Co. v. United States*,
    838 F.3d 1341 (Fed. Cir. 2016) ............................................................................... 6

*SEVEN Networks LLC v. Google, LLC*,
    315 F. Supp. 3d 933 (E.D. Tex. 2018) .................................................................... 7

*Smith v. Orr*,
    855 F.2d 1544 (Fed. Cir. 1988) ............................................................................. 13

*United States v. Segura,*
    747 F.3d 323 (5th Cir. 2014) ................................................................................. 13

## Statutes

28 U.S.C. § 1694 ............................................................................................................ 1, 4

FED. R. CIV. P. 4(e), (h) .................................................................................................... 14

FED. R. CIV. P. 5(b) .......................................................................................................... 14

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Pursuant to the Court's February 13, 2020 Order (Dkt. 156), Defendant Google LLC ("Google") submits this supplemental brief in support of its Motion to Dismiss for Improper Venue to address the impact of the Federal Circuit's February 13, 2020 Opinion in *In re Google LLC*, No. 2019-126, 2020 WL 728165 (Fed. Cir. Feb. 13, 2020) (hereinafter "*Google*"). For at least the reasons set forth below, Google respectfully submits that, in addition to the reasons expressed in prior briefing, the decision in *Google* further demonstrates that this case should be dismissed or transferred for improper venue.

**I.     *GOOGLE* REQUIRES AN EMPLOYEE OR AGENT TO BE PHYSICALLY AND REGULARLY PRESENT AT THE ALLEGED PLACE OF BUSINESS**

In *Google,* the Federal Circuit held that in order to meet its burden to show a "regular and established place of business," a plaintiff must show that there is (1) the "regular, physical presence of an employee or other agent of the defendant" who is (2) "conducting the defendant's business at the alleged 'place of business.'" *Google,* 2020 WL 728165, at *5. The Federal Circuit stated that these requirements are apparent from the service statute for patent infringement actions (28 U.S.C. § 1694), which states that service may be made upon a defendant's "agent or agents" who are conducting business at the regular and established place of business. *Id.,* at *4-6. The court noted that the "Congress that enacted the venue statute stated that the 'main purpose' of the statute was to 'give original jurisdiction to the court where a <u>permanent agency transacting the business</u> is located.' 29 Cong. Rec. 1900 (1897) (statement of Rep. Lacey)," and that Congress further explained "only a 'permanent agency'—and not 'isolated cases of infringement'—would be enough to establish venue." *Id.,* at *5 (quoting 29 Cong. Rec. 1900 (1897)) (emphasis in original) (internal brackets omitted).

The Federal Circuit then considered "whether Google had an employee or agent with a regular, physical presence at its 'place of business' and whether that employee or agent was

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

conducting Google's business." *Id.*, at *6. The court noted that "[t]he record is clear that there is no Google employee conducting business in the Eastern District of Texas." *Id.* The court also considered whether the ISPs hosting the GGC servers within their data centers and providing network access to the servers could be considered an agent conducting Google's business for patent venue purposes. *Id.*

Drawing on general principles of agency law embodied in the Restatement, the Federal Circuit defined an agency relationship as "a 'fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.'" *Id.* (quoting Section 1.01 of the Restatement (Third) of Agency). The court further held, relying on Supreme Court law, that "'[t]he essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by the principal to the agent that the agent shall act on his behalf,' and (3) the 'consent by the agent to act.'" *Id.* (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)) (internal brackets omitted).

In *Google*, the plaintiff argued (just as PMC does here) that the GGC servers and the rack space they occupied represent a regular established place of business of Google. *Id.,* at *1. The Federal Circuit concluded the rack space in the ISPs' facilities could qualify as a "physical place" for venue purposes. *Id.*, at *4 (citing *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2018)). However, the Federal Circuit nevertheless concluded that venue was improper because no Google employees were present within the District and the ISPs were not agents conducting Google's business. *Id.*, at *7-8.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

In analyzing whether the ISPs could be considered agents of Google, the court considered a number of features.  First, the court found that while the ISPs provide Google with a service in the form of network access, "Google has no right of interim control over the ISP's provision of network access beyond requiring that the ISP maintain network access to the GGC servers and allow the GGC servers to use certain ports for inbound and outbound network traffic." *Id.*, *at* *6.  Applying the Restatement (Third) of Agency, the court found that Google's inability to give interim instructions to the ISPs demonstrated that the ISPs are not agents of Google.  *Id.*  Second, the court found that, although provisions in the ISP contracts requiring the ISPs to install the GGC servers "may be suggestive of an agency relationship, we do not consider the ISPs performing these installation functions to be conducting Google's business within the meaning of the statute." *Id.*  Instead, because the installation activity is a "one-time event for each server" the Federal Circuit held that an ISP could not be conducting a "regular and established" business.  *Id.*

Finally, the Federal Circuit observed that "the contracts provide that 'Google may from time to time request that [the ISP] perform certain services' involving 'basic maintenance activities' with respect to the GGC servers." *Id.*  Here as well, while the court found the maintenance provision to potentially be "suggestive" of an agency relationship, it held that "[t]he better reading of the statute is that the maintenance activities cannot, standing alone, be considered the conduct of Google's business." *Id.*, at *7.  Instead, "[m]aintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers." *Id.*  And it was the latter activities that was Congress' focus in drafting the venue statute.  *Id.* (noting "there is no suggestion in the legislative history that maintenance functions that existed at the time, such as the maintenance of railways or

telegraph lines, constituted 'conducting [the defendant's] business' within the meaning of the statute."). "[B]earing in mind that, as we noted in *Cray*, the Supreme Court has cautioned against a broad reading of the venue statute," the court concluded venue was not proper in the Eastern District because "Google lacked a 'regular and established place of business' within the district since it has no employee or agent regularly conducting its business at its alleged 'place of business' [the GGC servers] within the district." *Id.*, at *7-8.

## II. THE EXISTENCE OF A QUALIFYING AGENCY RELATIONSHIP IS AN ISSUE OF STATUTORY CONSTRUCTION GOVERNED BY FEDERAL CIRCUIT LAW

The Court ordered the parties to address what sources of law it should consider when assessing whether qualifying "agency relationships" exist under *Google*. Dkt. 156 at 1. Initially, "Federal Circuit law, rather than regional circuit law, governs [the] analysis of what § 1400(b) requires." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2018); *see also In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (holding that Federal Circuit law, rather than regional circuit law, governs the question of which party bears the burden of proof with respect to questions of venue). In particular, assessing whether an "agen[cy]" relationship exists within the meaning of the patent service statute, 28 U.S.C. § 1694, is one component of determining whether a "regular and established place of business" exists that can give rise to venue under Section 1400(b). Thus, applying Federal Circuit law to the agency question is appropriate.[1]

The Federal Circuit's opinion in *Google* demonstrates that the meaning of the term "agent" is informed by the "essential elements of agency" derived from the generic principles embodied in the Restatement (Third) of Agency. 2020 WL 728165, at *6 (defining agency in accordance with Section 1.01 of the Restatement (Third) of Agency). That meaning may be

---

[1] Additionally, the Federal Circuit will hear all appeals involving Section 1400(b), including those assessing whether an agency relationship exists; the application of Federal Circuit law to this question is appropriate for that reason as well. *See ZTE*, 890 F.3d at 1012.

further elucidated by Supreme Court law interpreting and expounding on the principles articulated in the Restatement. *See id.* (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003), a Supreme Court case interpreting the Restatement definition of agency).

However, the Court should be cautious in looking to the meaning of the term "agent" in other statutes and substantive areas of federal law. In many instances, the same word can have a different meaning based on context. *See Envtl. Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007). That is especially true when, as here, an overarching interpretive principle informs the meaning of a given statute. In *Google*, the Federal Circuit stressed that courts should resist "a broad reading of the venue statute" and strive to articulate "relatively clear rules" that minimize the need for jurisdictional litigation and discovery. 2020 WL 728165, at *7. Other substantive statues are governed by different interpretive principles. For instance, courts often read civil rights statutes "broadly" to give terms more capacious definitions than in "traditional common law applications" given their "remedial purposes." *See McLaughlin v. Seafood, Inc.*, 861 F.2d 450, 452 (5th Cir. 1988) (discussing the Fair Labor Standards Act). Such an approach would be inappropriate in the context of the patent venue statute, which has no "remedial" purpose and should instead be given a *narrow* construction. *See Google*, 2020 WL 728165, at *7.[2]

Finally, the existence of an "agency" relationship is necessary, but not sufficient, to satisfy the *Google* test. The Court must also consider whether the agent has a "regular, physical presence" and is "regularly conducting" the defendant's business. *Google,* 2020 WL 728165, at *5, 8. These criteria also derive from the patent service and venue statutes. *See id.,* at *5.

---

[2] Although *Meyer* itself was a Fair Housing Act case, the Court was not construing the text of the Fair Housing Act. *See* 537 U.S. at 285-286. Rather, in the face of statutory silence, the Court looked to the Restatement's general principles of agency law to determine the scope of vicarious liability under the Act. *See id.*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Unlike "agency," however, they are relatively unique to that context and lack a common-law pedigree to inform their meaning; thus, the best available guide to the phrases' meaning is existing Federal Circuit law.

### III.   THERE ARE NO GOOGLE EMPLOYEES OR AGENTS THAT ARE PHYSICALLY AND REGULARLY PRESENT AND CONDUCTING GOOGLE'S BUSINESS AT ANY ALLEGED PLACE OF BUSINESS

In its Opposition to Google's Motion to Dismiss and after taking extensive venue discovery, PMC identified ▆▆▆▆▆▆▆▆ the GGC servers that were the subject of the Federal Circuit's decision in *Google*, ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ Under Federal Circuit law, "the Plaintiff bears the burden of establishing proper venue," including the existence of an agency relationship. *ZTE*, 890 F.3d at 1013; *see also Pac. Gas & Elec. Co. v. United States,* 838 F.3d 1341, 1359 (Fed. Cir. 2016) ("As a general rule, the party asserting the agency has the burden of proving both the existence of the relationship and the authority of the agent.") (quoting 12 Williston on Contracts at § 35.2 & Restatement (Third) of Agency at § 1.02(d)). PMC has not, and cannot, meet its burden as to venue generally or agency specifically for any of these theories.[3]

### A.   The Federal Circuit Has Held that the GGC Servers Cannot Be a Regular and Established Place of Business of Google

PMC makes the same allegations as the *Google* plaintiff regarding the GGC servers previously operating within this District. Compl. at ¶¶ 8-30; Opp. at 22-24. Like the plaintiff in *Google*, PMC has not identified any instances in which a Google employee has been regularly and physically present at the ISP data centers where the GGC servers were located (and Google

---

[3]   Google addresses in this brief why each theory of venue advanced by PMC fails under *Google*. To be clear, Google continues to believe that each of these theories also fails for the additional reasons set forth in its Motion and Reply and that PMC has also not met its burdens under the factors set forth by the Federal Circuit in *Cray* and *ZTE*.

is similarly aware of no such instances). Instead, PMC points to the exact same facts that the Federal Circuit rejected as insufficient in *Google* regarding Google's relationship with the ISPs. For example, PMC argues, just as the plaintiff did in *Google*, that the ISPs are responsible for installing the server, providing it with access to the network, and performing appropriate maintenance. Compl. at ¶¶ 26. But because the Federal Circuit has already determined that the GGC servers do not constitute a "regular and established place of business" as no employee or agent of Google regularly conducts its business at the GGC servers within the District, this theory of venue fails.

Furthermore, it is undisputed that the GGC servers in this District were drained and taken out of service on November 23, 2018, roughly four months before the Complaint was filed. *See* Reply at 3. Because, as this Court noted in *SEVEN Networks*, "[v]enue is assessed as of the time of filing of the complaint," 315 F. Supp. 3d 933, 941 n.7, PMC cannot rely on the GGC servers to show Google has a "regular and established place of business." *See* Reply at 3-6.

> **B.  No Google Employees or Agents Are Regularly and Physically Present and Conducting Google's Business** ▮▮▮▮▮

7

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████

  ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ ██████████████

███████████████████████████████████████████████████████████████ █

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ ████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

    ██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

█  ██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███  ████████████████████████████████████

████████████████████████████████

      **C.**     █████████ **Is Not a Regular and Established Place of Google's Business**

██ ███ ███ █ █ ███ ███ ███ █ ███ █ ███

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

█████████████████████████████████████

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

### IV. UNDER CURRENT LAW AND TECHNOLOGY A MACHINE CANNOT BE AN "AGENT" AND IN ANY EVENT NOT UNDER THE CIRCUMSTANCES PRESENT HERE

Finally, in *Google*, the Court wrote:

> To be clear, we do not hold today that a "regular and established place of business" will always require the regular presence of a human agent, that is, whether a machine could be an "agent." Such a theory would require recognition that service could be made on a machine pursuant to 28 U.S.C. § 1694.

2020 WL 728165, at *8. Google respectfully submits that this passage is not relevant to the present case for several reasons. For one thing, it is dicta because nothing about this passage affected the Court's determination of improper venue in *Google*. *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it."); *see also Smith v. Orr*, 855 F.2d 1544, 1550 (Fed. Cir. 1988) ("Broad language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority.").

In addition, its impact is limited and applies only to hypothetical future cases. First, to imply that a machine might be an agent does not vitiate the requirements of an agency relationship. In other words, a machine could only qualify as an "agent" if technology and the

13

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

law advanced to a place where a machine could "consent" to be controlled by the principal. *Google*, 2020 WL 728165, at *6. That technological and legal future has not yet arrived. Second, the Court wrote that a determination that a machine, as opposed to a human, could be an agent "would require recognition that service could be made on a machine pursuant to 28 U.S.C. § 1694." *Id.*, at *8. But the Federal Rules currently provide no explicit process by which service can be made upon a machine; to the contrary, the Rules pertaining to service presuppose that an individual will be served. *See* FED. R. CIV. P. 4(e), (h), 5(b). This counsels against reading a nineteenth-century statute to override that requirement. Of course, at some point in the future, Congress could amend the service statute or the Federal Rules could be changed to allow legal process to be served solely on a machine. The Court's statement is merely an indication that its opinion would not foreclose future theories of venue if that were to happen.

Further, it is clear that this statement has no impact on the specific facts of this case. The Federal Circuit's opinion expressly held that the GGC servers are not sufficient to support venue, and it did not even inquire whether the GGC servers were machines that could consent to agency and receive service—showing that the court was only preserving a hypothetical, future possibility. *Id.*, at *7. █████████████████

███████████████████████████████████████

███████ ███████████████████████ ███████████████████

███████████████████████████████████████

█████████████████████ ███████████████████

███████████████████████████████████████

███████████████████████████████████████

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████ ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████ Thus, the Federal Circuit's statements regarding the potential for the service statute to be amended or the Federal Rules to be modified to allow service on machines has no bearing on whether venue is proper in this case.

## V.   CONCLUSION

For the foregoing reasons as well those advanced in Google's Motion and Reply, Google respectfully requests that this case be dismissed or transferred to the Northern District of California.

Dated: February 20, 2020

Respectfully submitted,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
David A. Perlson
davidperlson@quinnemanuel.com
Carl G. Anderson
carlanderson@quinnemanuel.com
Felipe Corredor
felipecorredor@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Mark Tung
marktung@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel : 650-801-5000
Fax: 650-801-5100

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

    Nima Hefazi (*pro hac vice*)
    nimahefazi@quinnemanuel.com
    Miles D. Freeman
    milesfreeman@quinnemanuel.com
    QUINN EMANUEL URQUHART &
    SULLIVAN LLP
    865 S. Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    Tel: 213-443-3000
    Fax: 213-443-3100

    James Mark Mann
    mark@themannfirm.com
    Gregory Blake Thompson
    blake@themannfirm.com
    MANN TINDEL & THOMPSON
    300 W. Main
    Henderson, TX 75652
    Tel: 903-657-8540
    Fax: 903-657-6003

    *Attorneys for Google LLC*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via email on February 20, 2020.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to the terms of the Protective Order (Dkt. 86).

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven