# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC, | Case No. 2:19-cv-00090-JRG |
| Plaintiff, | LEAD CASE |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |
| PERSONALIZED MEDIA COMMUNICATIONS, LLC, | |
| Plaintiff, | Case No. 2:19-cv-00091-JRG |
| v. | MEMBER CASE |
| NETFLIX, INC., | |
| Defendant. | |

**DEFENDANT NETFLIX INC.'S RESPONSIVE SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR IMPROPER VENUE**

PMC's supplemental brief fails to address most of the Court's questions, argues that the ISPs are Netflix's agents without any discussion of the elements of agency, distorts the factual record, and urges the Court to ignore controlling law.

### I. Netflix's OCAs Are Not Places of Netflix under *Cray*.

PMC argues that because a "leased shelf space or rack space can serve as a 'place'" the OCAs must be places. Dkt. No. 160 ("PMC Br.") at 2 (citing *In re Google LLC,* No. 2019-126, 2020 WL 728165, at *4 (Fed. Cir. Feb. 13, 2020) ("*SIT*")). Not so. While the Federal Circuit found that a *shelf* may be a place, it did not announce that *servers* are places. The difference is important—the GGC servers are located where *Google* decides and cannot be moved (or even have their screws loosened) without Google's permission. Thus, the GGC servers are legally and physically *bound* to the shelves which are effectively under Google's control. *Seven Networks v. Google*, 315 F.3d 933, 952 (E.D. Tex. 2018) (GGC servers were "permanent fixtures" and "for an ISP to move a previously installed GGC from one location to a new location, it must secure Google's permission."). In contrast, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and ISPs are free to move (or repurpose) them. *See, e.g.*, Dkt. No. 159 ("Netflix Br.") at 5-7. As a result, Netflix has no control over any shelves within the ISP's facility—thus the discussion in *SIT* that shelf space "may" constitute a place is not applicable. But even if the Court were to find that the OCAs are "places," they would not be places *of Netflix*. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ While (like all objects) they occupy a "place," it is not a place of Netflix because Netflix does not physically occupy or control it. *See, e.g.*, *id*.

### II. PMC Argues ISPs Are Netflix's Agents Without Addressing Elements of Agency.

PMC bears the burden to prove an agency relationship. *See* Restatement (Third) of Agency ("Restatement") § 1.02 cmt. d. Agency requires that the principal and the agent *each* consent that the agent will act on the principal's behalf. *SIT*, 2020 WL 728165, *6. Although the respective

**NETFLIX'S RESPONSIVE SUPP. BRIEF ISO ITS MOTION TO DISMISS – Page 1**

consent of the principle and agent is each an "essential element[] of agency" (*Id.* citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)), PMC does not analyze that consent. ██████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████; *see also* Restatement § 1.01 cmt. e ("the agent owes a fiduciary obligation to the principal . . . the term 'fiduciary' signifies that an agent must act loyally in the principal's interest as well as on the principal's behalf"). There is **no** evidence that ISPs have consented to act loyally in *Netflix's* interest and on *behalf of Netflix*. *See* Netflix Br. at 8.

      a) <u>Designating Points of Contact Does Not Create an Agency Relationship</u>

PMC urges the Court to find that, because the Deployment Guide asks ISPs to identify individuals who are "available to perform" certain roles, ISPs are Netflix's agent. PMC Br. at 6-7. This argument ignores both the consent and control elements of agency. PMC makes no attempt to show that Netflix has control over these individuals or that Netflix has consented to allow these individuals to act on behalf of and bind Netflix. While an individual whom the ISP designates to perform a role and/or interact with Netflix might be an agent *of the ISP*, s/he is not an agent of Netflix. *See, e.g.*, *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1297 (5th Cir. 1994) (holding that aide to senate candidate was candidate's agent because he served as the candidate's point of contact with third parties). And the contracts do not even require the designated people to live or work in this district. *See* Dkt. No. 62-12, Ex. 11 at 5-6.

PMC also posits that "[i]f Netflix employees fulfilling these roles were working out of the

Suddenlink facility in the Eastern District of Texas, there would be no question that Netflix was operating a regular and established place of business there." PMC Br. at 7. This makes no sense. As an initial matter it presumes the very element that PMC must prove—that Netflix has *control* over those individuals. If these people were Netflix's employees, then Netflix would control them, and there would be no need to evaluate them under agency principles. But even if we ignore that problem, *In re Cray* requires the people present at the place of business to be engaged in Netflix's business—which these individuals are not. Instead, these individuals are engaged in exactly the kind of ancillary maintenance and support activities the Federal Circuit found insufficient to create venue in *SIT*. *See* Netflix Br. at 10-13.

    b) <u>Netflix and the ISPs Disclaimed Essential Elements of Agency.</u>

PMC dismisses the parties' agency disclaimer without considering its language. After citing authority that statements in a contract are not necessarily dispositive as to the existence of an agency relationship, PMC proceeds as if such statements are per se *irrelevant* to the question. But agreement terms that "negatively characterize the relationship as not one of agency . . . are relevant to determining whether the parties consent to a relationship of agency." *See* Restatement § 1.02 cmt. b. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Although rejecting the agency label may not be dispositive, it is highly relevant that the parties clearly rejected the consent and control elements required to create an agency relationship. *See id.* at cmt. a ("The parties' references to functional characteristics may . . . be relevant to determining whether a relationship of agency exists."); ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

    c) <u>Netflix Does Not Provide Interim Instructions.</u>

PMC claims that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ and therefore the ISPs are agents of Netflix. PMC Br. at 9. PMC provides no evidence to support this

**NETFLIX'S RESPONSIVE SUPP. BRIEF ISO ITS MOTION TO DISMISS – Page 3**

claim and therefore fails to meet its burden. Nor can it meet that burden by pointing to the Deployment Guide. To the contrary, "[t]he fact that [a service agreement] imposes constraints on the service provider does not mean that the service recipient has an interim right to give instructions to the provider. Thus, *setting standards in an agreement for acceptable service quality does not of itself create a right of control*." Restatement § 1.01 cmt. f (emphasis added).

### III. The ISPs Are Not Conducting Netflix's Business.

PMC argues that because ISPs operate OCAs, and those OCAs store and serve video content to Netflix subscribers, "ISPs very much act as Netflix's agents." PMC Br. at 5. This argument both ignores the basic principles of agency and is foreclosed by *SIT*. This Court previously found that the GGC servers were "responsible for serving video content from . . . Google services." *Seven Networks*, 315 F. Supp 3d at 948. And in *SIT*, the court found that Google's business included "[p]roviding video . . . to residents of the Eastern District." *SIT*, 2020 WL 728165, at *1. On those facts, the Federal Circuit found that the ISPs were *not* conducting Google's business. The same thing is true here. PMC contends that the OCAs are "responsible for delivering Netflix TV shows" and that Netflix's business is "subscription streaming entertainment service." PMC Br. at 5. Thus, as with Google's videos and the GGC servers, the ISPs are not conducting Netflix's business by setting up or maintaining the OCAs.

PMC also claims that ISPs conduct Netflix's business because they provide network connections to the OCAs. *See* PMC Br. at 8-9. Again, the Federal Circuit rejected this reasoning: where an "ISP provides the GGC servers with network access, i.e., a connection to the ISP's customers as well as the public Internet . . . the ISPs are not agents of Google." *SIT*, 2020 WL 728165, *6; *see also* Netflix Br. at 9-13. The same is true here.

### IV. No Additional Discovery Is Warranted

Although the Court in *SIT* announced a new legal rule (e.g., employees are necessary), the

**NETFLIX'S RESPONSIVE SUPP. BRIEF ISO ITS MOTION TO DISMISS – Page 4**

holding does not turn on new or different facts. Rather, the degree of control that Netflix exercises over the ISPs was already at issue during venue discovery, as were the communications between Netflix and the ISPs. This is not a case where the parties must deal with a new legal framework that requires additional discovery into facts the parties did not know were relevant.

Moreover, during venue discovery ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Thus, the "additional categories" PMC seeks (e.g. "Netflix's communications with its Eastern District of Texas ISP partners") ***were already produced in discovery***. There is no need for additional discovery. And if the Court does grant additional discovery, it should stay the case given that transfer is clearly warranted on the current record.

### V. PMC's Transfer Request is Improper

PMC now requests a do-over of its venue choice. This request is waived and substantively and procedurally flawed. As an initial matter, PMC has not even filed a § 1404(a) motion—it merely appends an "alternative request" for transfer to its supplemental venue briefing. Even if PMC's request could be classified as a proper motion, it fails to address the necessary factors. *See, e.g.*, *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 123 (E.D. Tex. 2009) (discussing factors). PMC appears to assume that its alternate forum choice is entitled to deference. It is not. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 n.10 (5th Cir. 2008) (explaining that plaintiff's choice of forum is not an independent factor in a forum analysis). And even if a plaintiff's *first* choice of forum were afforded any deference, its *second* choice should get none. *See Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017). As Netflix explained in the prior briefing motion, the Northern District of California is the most convenient forum in which to litigate this case given the location of evidence, witnesses, and relevant subpoena power. *See* Dkt. No. 62 at 12-16; Dkt. No. 96 at 16-19.

**NETFLIX'S RESPONSIVE SUPP. BRIEF ISO ITS MOTION TO DISMISS – Page 5**

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Kyle R. Akin
Texas Bar No. 24105422
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: kakin@haltomdoan.com

OF COUNSEL:

Clement Roberts
Sarah Kate Mullins
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Phone: 415-773-5700
Email: croberts@orrick.com
Email: sarahmullins@orrick.com

Alyssa Caridis
ORRICK HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Phone: 213-629-2020
Email: acaridis@orrick.com

Erin Leach
Johannes Hsu
ORRICK HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: (949) 567-6700
Email: eleach@orrick.com
Email: johanneshsu@orrick.com

**ATTORNEYS FOR DEFENDANT NETFLIX, INC.**

## CERTIFICATE OF SERVICE

      The undersigned certifies that all counsel of record were served with a true and correct copy of the foregoing by electronic mail on this 27th day of February 2020.

                                      */s/ Jennifer H. Doan*
                                      Jennifer H. Doan