IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC.<br><br>NETFLIX, INC.<br><br>Defendants. | **FILED UNDER SEAL**<br><br><br>Case No. 2:19-cv-90-JRG<br>LEAD CASE<br><br>Case No. 2:19-cv-91-JRG |

**PLAINTIFF PERSONALIZED MEDIA COMMUNICATIONS LLC'S REPLY
SUPPLEMENTAL BRIEF ADDRESSING VENUE FOR DEFENDANT GOOGLE**

### A. Google Has a Regular and Established Place of Business ▮

Google's characterization of ▮ ▮ Google Br. 10, is not consistent with the record. Google claims that ▮ ▮ ▮ ▮ ▮ ▮ ▮, are not sufficient under *SIT* because ▮ ▮ Google Br. 11. That argument would lead to the absurd conclusion that supervisors or business managers—who do not personally produce, store, or transport goods or provide customer service, but instead supervise others who do so and negotiate related contracts—do not conduct business.

Google argues ▮ ▮ ▮ Google Br. 12. That is legally irrelevant because "it is well established that parties' statements in a contract are not dispositive as to the existence of an agency relationship." *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1359 (Fed. Cir. 2016); *see also* Restatement (Third) of Agency ("Restatement") § 1.02 cmt. b (noting that the presence of statements disclaiming agency "in an agreement is not determinative and does not preclude the relevance of other indicia of consent").[1,2] Nor is it relevant that ▮ ▮

---

[1] Google agrees that the existence of an agency relationship is governed by Federal Circuit law, informed by the Restatement. *See* Google Br. 4.

[2] For the same reason, ▮ ▮ , *see* Google Br. 8-9, is not on point.

███████████████████, *see* Google Br. 10, because "[a]n agent can serve multiple principals at once, even principals that are competing with one another." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1250 (10th Cir. 2013) (citing cases and the Restatement § 3:14 cmt. b ("When an agent represents more than one principal, the principals' interests may conflict.")).



Google claims that it does not ███████ ████████████████████ ████████████ Google Br. 10. That is belied by ████████████ ████████████ ████████████████████ ████████████████████████████████████████████ *See, e.g.*, PMC Br. 5-8 (citing, for example, Dkt. No. 88, ████████ ████████████████████ ████████████████████████████████ Google states in a conclusory fashion ████████████ ██ ████████████████████████████████ Google Br. 12, ████████████████████ ████████████ ████████████████ ████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████ But it is hornbook law that "[a] principal's failure to exercise the right of control does not eliminate it, nor is it eliminated by physical distance between the agent and principal." Restatement § 1.01 cmt. f; *see also Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 345 (S.D.N.Y. 2018) ("The fact that Marwan claims he gave no direction to Subhi is thus immaterial. . . . [I]t is well-established that it is not essential that the principal make use of the right to control, or even that a principal's efforts to control be effective.") (citations omitted).

Google cannot legitimately dispute ███████████ ███ ███████ ████████████████████████ and attempts to limit the sources of law this Court can consider in the hopes that the Court will close the book on █████████ after seeing only the ███████████████████ ██ ██████████ *See, e.g.*, Google Br. 5 (arguing the Court should not look to other courts interpreting the same Restatement of Agency Google concedes is applicable here). Because of the ████████████████████████████ ████████ ██ ████████ the Court should reject this defense.

Finally, Google reiterates its argument that █████████████ is not "of" Google under the third *Cray* factor, because █████████████████████████████████████████████████████████████████ Google omits the fact that ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████. *See* PMC Br. 3. █████████████████ █████████████ ████████████████████████████████████████████████████ In *ZTE*, the Federal Circuit remanded for further consideration of whether a call center servicing ZTE's customers was "of" ZTE, finding the district court should have assessed whether ZTE "owns any of the equipment located there" and whether the call center operator "would need permission from ZTE USA to move its call center outside of the Eastern District of Texas or to stop working for ZTE USA." 890 F.3d at 1015. ████ █████████████████████████████████ ████████████████████████████████████████████████████████, *see* PMC Br. 2, ██████████████████████████

## B. Google's Attempt to Distance Itself From its ▆▆▆▆▆▆▆▆▆▆ Fails

Google does not acknowledge it has previously argued that its own employee presence at the location, even for servicing equipment, is dispositive. *See* PMC Br. 10 (quoting Google's oral argument to the Federal Circuit); *see also Super Interconnect Technologies LLC v. Google LLC*, No. 2:18-cv-00463-JRG (E.D. Tex.), Dkt. No. 21 (Google's Motion to Dismiss) at 5 ("No Google employee has ever seen or visited the servers in this District"). ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Google goes so far as to complain that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ But it is not PMC's burden to provide discovery on Google's local business operations—that was Google's obligation, and at its deposition, it was unable to provide testimony on this issue. *See* PMC Br. 10.

Indeed, the lack of discovery from Google is precisely the problem. As soon as venue discovery opened, PMC requested from Google "[a]ll documents relevant to . . . Google operations in the Eastern District of Texas." *See* Dkt. No. 89 at 1 n.1, Ex. 11; *see also* Dkt. No 51 (ordering venue discovery beginning on June 13, 2019 and ending on July 29, 2019). In response, Google provided minimal discovery largely related to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Dkt. No. 89 at 1 n.1; Ex. 12. Google did not provide any discovery about its ▆▆▆▆▆▆▆ ▆▆▆▆▆ until the tail end of the discovery period, and Google never agreed to allow PMC to depose its 30(b)(6) representatives knowledgeable about its Eastern District of Texas ▆▆▆▆▆ ▆▆▆▆, instead insisting that PMC use depositions taken by another party in another case. *See id.*

4

Now Google crows that "PMC" did not identify sufficient Google employees in those deposition transcripts from another case that PMC was forced to rely on here.

There is also no merit to Google's argument that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ cannot constitute its places of business because they do not "cache or serve content" to district residents. Google Br. 7 n.4. Google's business is not caching and serving content to residents of Texas; it is an "information company" and its business includes "organiz[ing]" information and "mak[ing] it universally accessible[.]" *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018); *see also* PMC Br. 12 n.4. Google's ▇▇▇▇▇▇▇▇▇ the information that comprises Google's business, and are its places of business. *SIT*, 2020 WL 728165, at *7.

### C. GGC Servers are Google Agents

The Federal Circuit rejected Google's GGC servers as its places of business on a limited record, and reserved decision on whether a "machine," such as a GGC server, may be an agent. PMC Br. 11. Google says those lines of *SIT* are "dicta," Google Br. 13, but that begs the question this Court requested the parties brief. This Court has the power to decide this issue, which it already addressed in *Seven Networks*, reasoning that Congress' exemption of ATMs assumes they would otherwise be places of business under the statute. 315 F. Supp. 3d at 964.

Google does not address the critical issue of ATMs in its brief, instead arguing that machines cannot be agents because they cannot consent. Google Br. 13-14. That argument falls flat; machines programmed by Google cannot <u>withhold</u> consent, but they consent by performing the actions Google tells them to. The Federal Circuit did not suggest, as Google argues, that a machine can only be an agent if it has a sentient understanding of its own ability to consent. Instead, the issue is service of process. Because, under the applicable rules, Google could be served process at the location of its GGC servers, *see* PMC Br. 14, that standard is met.

Dated: February 27, 2020

Respectfully submitted,

By: *Joseph S. Grinstein*

Arun Subramanian
New York Bar No. 4611869
Tamar Lusztig
New York Bar No. 5125174
Geng Chen
New York Bar No. 5377262
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019-6023
Telephone: (212) 471-8346
asubramanian@susmangodfrey.com
tlusztig@susmangodfrey.com
gchen@susmangodfrey.com

Joseph S. Grinstein
Texas Bar No. 24002188
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 653-7820
jgrinstein@susmangodfrey.com

S. Calvin Capshaw
Texas Bar No. 03783900
CAPSHAW DERIEUX LLP
114 E. Commerce Avenue
Gladewater, TX 75647
Telephone: (903) 845-5770
ccapshaw@capshawlaw.com

Dmitry Kheyfits
New York Bar No. 4743795
KHEYFITS BELENKY LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (212) 203-5399
dkheyfits@kheyfits.com

*Attorneys for Personalized Media Communications, LLC*

**Certificate of Service**

I certify that on February 27, 2020, I electronically served the foregoing on all counsel of record and served all counsel of record via electronic mail.

*/s/ Tamar Lusztig*
Tamar Lusztig

**Certificate of Authorization to File Under Seal**

I hereby certify that this document is being filed under seal pursuant to the Court's authorization in the Protective Order entered in this matter.

*/s/ Tamar Lusztig*
Tamar Lusztig

7164886v1/016239