FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC<br><br>Plaintiff,<br><br>v. | |
| GOOGLE LLC.<br><br>Defendant. | Case No.: 2:19-cv-90-JRG |

**PMC'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, TO EXCLUDE EXPERT TESTIMONY, REGARDING GOOGLE'S LICENSE DEFENSE**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **TABLE OF CONTENTS**

I.   ISSUES PRESENTED ................................................................................................ 2

II.  UNDISPUTED MATERIAL FACTS ...................................................................... 2

III. FACTUAL BACKGROUND................................................................................... 5

    A.  The PMC-Rovi Dispute....................................................................................... 5

    B.  Google's Infringement of PMC's Patents ........................................................... 6

IV. LEGAL STANDARDS .......................................................................................... 6

V.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON GOOGLE'S LICENSE DEFENSE ........................................................................................................... 8

    A.  Google's Interpretation of the IPG License is Inconsistent with This Court's Prior Judgment ........................................................................................................... 8

    B.  Google Cannot Sustain its Evidentiary Burden................................................. 12

VI. THE COURT SHOULD EXCLUDE SCHONFELD'S TESTIMONY IN SUPPORT OF GOOGLE'S LICENSE DEFENSE ....................................................................... 16

VII. CONCLUSION .................................................................................................... 17

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. McCurry*,
 449 U.S. 90 (1980)..................................................................................................10

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)..................................................................................................7

*Bigelow v. Old Dominion Copper Mining & Smelting Co.*,
 225 U.S. 111 (1912)..................................................................................................10

*C.P. Interests, Inc. v. Cal. Pools, Inc.*,
 238 F.3d 690 (5th Cir. 2001) ...................................................................................7

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,
 72 F.3d 872 (Fed. Cir. 1995)....................................................................................7

*CEATS, Inc. v. TicketNetwork, Inc.*,
 No. 215CV01470JRGRSP, 2018 WL 457791 (E.D. Tex. Jan. 17, 2018) ..............17

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)..................................................................................................6

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993)..................................................................................................7

*Erbamont Inc. v. Cetus Corp.*,
 720 F. Supp. 387 (D. Del. 1989)..............................................................................11

*Eubanks v. F.D.I.C.*,
 977 F.2d 166 (5th Cir. 1992) ...................................................................................10, 11

*Goodman v. Harris Cnty.*,
 571 F.3d 388 (5th Cir. 2009) ...................................................................................17

*Houston Prof'l Towing Ass'n v. City of Houston*,
 812 F.3d 443 (5th Cir. 2016) ...................................................................................10

*Lall v. Bank of New York*,
 No. 3:16-CV-3366-L (BF), 2017 WL 4479944 (N.D. Tex. Apr. 10, 2017)............11

*Lubrizol Corp. v. Exxon Corp.*,
 871 F.2d 1279 (5th Cir.1989) ...................................................................................10

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................7

*MCA Records, Inc. v. Charly Records, Ltd.*,
  865 F. Supp. 649 (C.D. Cal. 1994) .................................................................11

*Meador v. Oryx Energy Co.*,
  87 F. Supp. 2d 658 (E.D. Tex. 2000).............................................................11

*Meza v. Gen. Battery Corp.*,
  908 F.2d 1262 (5th Cir. 1990) .......................................................................10

*Munoz v. Orr*,
  200 F.3d 291 (5th Cir. 2000) ....................................................................7, 17

*Owen v. Kerr–McGee Corp.*,
  698 F.2d 236 (5th Cir. 1983) ........................................................................17

*Personalized Media Commc'ns, L.L.C. v. Rovi Guides, Inc.*,
  635 F. App'x 909 (Fed. Cir. 2015) .........................................................15, 16

*Shore Expl. & Prod. Corp. v. Exxon Corp.*,
  976 F. Supp. 514 (N.D. Tex. 1997) ...............................................................11

*Southwest Airlines, Inc. v. Texas Int'l Airlines, Inc.*,
  546 F.2d 84 (5th Cir. 1977) ..........................................................................10

*St. Paul Mercury Ins. Co. v. Williamson*,
  224 F.3d 425 (5th Cir. 2000) ........................................................................10

*Stockton E. Water Dist. v. United States*,
  583 F.3d 1344 (Fed. Cir. 2009)........................................................................7

*Taylor v. Sturgell*,
  553 U.S. 880 (2008).......................................................................................10

*Vasquez v. Bridgestone/Firestone, Inc.*,
  325 F.3d 665 (5th Cir. 2003) ........................................................................10

*WH Holdings, L.L.C. v. Ace Am. Ins. Co.*,
  574 F. App'x 383 (5th Cir. 2014) ..................................................................16

**Other Authorities**

Fed. R. Civ. P. 56...............................................................................................6, 7

Fed. R. Civ. P. 702.............................................................................................2, 7

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

PMC accuses Google of infringing its patents by delivering and displaying video on demand through its YouTube applications. In defense, Google argues ████████████████ ████████████████████████████ a 2000 license PMC granted to Rovi Guides, Inc. ("Rovi"), in which Rovi obtained exclusive rights to PMC's patents in the "Interactive Program Guide" ("IPG") field (the "IPG license"). The crux of Google's argument is that its YouTube applications and web pages include IPG functionality, and therefore—although PMC does not accuse that IPG functionality—all of YouTube is licensed under the IPG license.

The same argument about the IPG license was the central issue of a lengthy dispute between PMC and Rovi, which resulted in an arbitration award by Judge Folsom, and then a final judgment from this Court, **rejecting Google's interpretation of the IPG license**. Those decisions conclusively determined that even if programming is accessed through an IPG, "the creation, distribution, transmission and use by a Consumer of the television or radio programming accessible through a licensed program guide are not included in the Interactive Program Guide field." Lusztig Decl. Ex. 1 (Declaratory Relief Order and Final Judgment, *Rovi Guides, Inc. and TVG-PMC Inc., v. Personalized Media Communications, L.L.C.*, No. 2:08-CV-00070-RSP (E.D. Tex. Nov. 22, 2017) (PMC-STRM_00368071)) at 2. Contrary to Google's arguments about YouTube, this Court's final judgment made clear that "**the functionality involved in the delivery or transmission of programming content associated with** tuning, pay-per-view, **video on demand**, near video on demand, personal video recording, or digital video recording, **are not covered by the IPG license**." *Id.* (emphasis added).

Google and its expert Dan Schonfeld **completely ignore these decisions**, and instead effectively argue that ██████████████████████████ is broader than the IPG license itself. Google's argument is illogical, barred by the doctrine of issue preclusion, and incorrect as a

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

matter of law, and this Court should reject it for the reasons explained below. In the alternative, if the Court does not grant summary judgment on Google's license defense, the Court should exclude the unreliable opinions proffered by Schonfeld, which ignore critical evidence and are a bald attempt to opine on legal conclusions.

## I.  ISSUES PRESENTED

1.  Whether there is any genuine issue of material fact that PMC's claims, which do not accuse any program guide functionality, are covered by a program guide license, where Google fails to address this Court's prior judgment rejecting Google's argument.

2.  Whether the Court should exclude under Rule 702 the opinions of Google expert Dan Schonfeld regarding Google's IPG license defense, where his opinion is nothing more than a legal conclusion about the scope of the Rovi license agreement.

## II.  UNDISPUTED MATERIAL FACTS

1.  On December 11, 2000, PMC granted a predecessor to what is now Rovi Guides, Inc. a license to its patents within several fields of use, the relevant one here being the "Interactive Program Guide field." Ex. 2 (IPG license) (PMCAPL01198705).

2.  The IPG license defines "IPG Applications" as "applications and services" that have a "primary purpose" to "provide descriptive information (including without limitation program listings) relating to television or radio programming available to Consumers." *Id.* ¶ 1.3.

3.  The Interactive Program Guide field does not cover the "creation, distribution, transmission and use by a Consumer of such other interactive or passive applications, features or services or the television or radio programming accessible through such IPG Applications." *Id.*

4.  In an arbitration to resolve a dispute concerning the scope of the license between PMC and Rovi, Hon. David Folsom addressed whether functionalities like "video on demand,"

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

which may be accessed through an interactive program guide, are within the Interactive Program Guide field.

5.   On November 7, 2017, Judge Folsom issued a decision finding that "the back-end operation of servers to store and deliver the [IPG] feature were never understood by Rovi to be included within the scope of the Exclusive IPG Provision;" the "term sheets define the anticipated exclusive license as encompassing navigation to, from, or within an IPG Product's displayed Home Page;" "PMC at the time was concerned that the breadth of the license might cause a 'daisy-chain' whereby any technology that was invoked, as long as it had 'originated from the guide,' would be licensed;" "[t]his concern was communicated to Rovi, understood, and was purportedly addressed in the final license agreement;" "Rovi acknowledged that PMC's concern was that you could potentially use an IPG license as a way of shoehorning into the field applications that really weren't IPGs;" and "[t]he term sheets and drafts all indicate that 'access' to features and applications other than those providing scheduling and programming information was a bright line for PMC." Ex. 3 (Statement of Decision and Final Award (PMCTH00015337) ¶¶ 25, 44, 48, 57 (alterations omitted).

6.   Judge Folsom therefore determined that the IPG license "does not encompass technology that provides programming to a Consumer, which programming could be or historically has been provided via television, consisting of video and associated audio programming that is not prescheduled and that is delivered in response to a specific request made by a Consumer," and "the extrinsic evidence as a whole demonstrates that, at the time of its execution, the parties intended the license to encompass technology for invoking and controlling the features listed in the second sentence from an IPG Application, but not all technology required to fully perform each of those features." *Id.* ¶¶ 61, 69.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

7.   On November 22, 2017, Magistrate Judge Roy S. Payne issued a final judgment confirming Judge Folsom's arbitration award. The judgment states that "'any device, portion or device, or process' is included with the IPG field only 'to the extent' that it is used to implement functionality otherwise encompassed by the Exclusive IPG Provision" and that "the creation, distribution, transmission and use by a Consumer of the television or radio programming accessible through a licensed program guide are not included in the Interactive Program Guide field. . . . Thus, the functionality involved in the delivery or transmission of programming content associated with tuning, pay-per-view, video on demand, near video on demand, personal video recording, or digital video recording, are not covered by the IPG license." Ex. 1.

8.   PMC's infringement allegations in this case accuse YouTube functionality that delivers and displays video on demand. Ex. 4 (excerpts of the May 18, 2020 Expert Report of Dr. Zixiang Xiong) ¶¶ 87-89, 128, 143, 148, 162.

9.   ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

10.  ████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

11. Neither Google nor its purported expert Dan Schonfeld acknowledge or address the arbitration decision by Judge Folsom or this Court's final judgment declaring the scope of the IPG license. Ex. 5 at 5-6; Ex. 6 (excerpts of the expert report of Dan Schonfeld).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### III.    FACTUAL BACKGROUND

#### A.   The PMC-Rovi Dispute

PMC and Rovi executed the IPG license in 2000. Ex. 2. After a lengthy litigation with a trip to the Federal Circuit and back, on the eve of trial PMC and Rovi agreed to arbitrate the scope of the "Interactive Program Guide" field in the IPG license. An evidentiary hearing was held in August 2017 before Judge David Folsom. After receiving documentary and testimonial evidence, Judge Folsom determined that the IPG license "does not encompass technology that provides programming to a Consumer, which programming could be or historically has been provided via television, consisting of video and associated audio programming that is not prescheduled and that is delivered in response to a specific request made by a Consumer," and "the extrinsic evidence as a whole demonstrates that, at the time of its execution, the parties intended the license to encompass technology for invoking and controlling the features listed in the second sentence from an IPG Application, but not all technology required to fully perform each of those features." Ex. 3 ¶¶ 61, 69. In a nutshell, Judge Folsom adopted PMC's proposed construction of the IPG license that while the Interactive Program Guide field includes the functionality of program guides themselves, it does not include features like video on demand, even if those features could be accessed through a program guide. *See* Ex. 3 at Exhibit A (Proposed Declaratory Relief Order and Final Judgment).

PMC and Rovi thereafter submitted a final judgment to this Court, which was signed by Magistrate Judge Payne and provides that "'any device, portion or device, or process' is included within the IPG field only 'to the extent' that it is used to implement the functionality otherwise encompassed by the Exclusive IPG Provision;" "the creation, distribution, transmission and use by a Consumer of the television or radio programming accessible through a licensed program side

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

are not included in the Interactive Program Guide field;" and "the functionality involved in the delivery or transmission of programming content associated with tuning, pay-per-view, video on demand, near video on demand, personal video recording, or digital video recording, are not covered by the IPG license." Ex. 1.

### B.  Google's Infringement of PMC's Patents

PMC accuses Google of infringing its patents by transmitting, delivering, and displaying video on demand through its YouTube applications and web services. Ex. 4 ¶¶ 87-89, 128, 143, 148, 162. While the home page displayed by the YouTube application or web page, through which a YouTube user can access YouTube videos, may provide "descriptive information" about "television or radio programming available to Consumers," it is undisputed that



While Schonfeld opines that the YouTube player itself provides certain "descriptive information" to YouTube viewers, *see* Ex. 6 ¶¶ 422, 427-29, he does not opine that the "primary purpose" of the YouTube player is to provide descriptive information, and indeed the undisputed purpose of the YouTube player is to play video on demand.

## IV.    LEGAL STANDARDS

Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). Google bears the burden of proof for its affirmative license defense. *See Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1360 (Fed. Cir. 2009) (defendant bears the burden of proof for affirmative defenses); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) (the "alleged infringer" has "the burden of establishing the existence of . . . license as an affirmative defense"). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation omitted).

In considering a Rule 56 "motion opposed by expert testimony, the trial court has broad discretion to rule on the admissibility of the expert's evidence." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (citations and quotations omitted). Rule 702 requires the proffered expert be qualified to testify by virtue of "knowledge, skill, experience, training, or education." The party offering the expert testimony bears the burden to show it is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993). Expert witnesses may not offer opinions that amount to legal conclusions. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON GOOGLE'S LICENSE DEFENSE

### A.    Google's Interpretation of the IPG License is Inconsistent with This Court's Prior Judgment

Google's position— ███████████████████████████████████████████████

████████████ —is absurd. Like Google, Rovi previously argued that the IPG license gave it an exclusive right over any product that uses an IPG, and to "perform any function," including functions beyond an IPG, as long as the product "is also used to perform functions within the scope" of the IPG. Ex. 3 ¶ 19. After PMC and Rovi arbitrated that issue, this Court conclusively rejected Rovi's argument. In its judgment, the Court ruled that even if "television or radio programming" are "accessible through" an IPG, "the functionality involved in the delivery or transmission of programming content associated with . . . video on demand . . . [is] not covered by the IPG license." Ex. 1 (emphasis added).

To the extent PMC can understand Google's argument, Google attempts to extricate itself from that judgment by arguing that video on demand programming was "accessible through" an IPG in Rovi's case because Rovi used separate set-top box hardware, whereas Google's YouTube product is integrated and therefore the entire product is an IPG.

For example, Google, through its expert Schonfeld, presents the legal argument that because the YouTube applications and web services provide "descriptive information" purportedly constituting an IPG, any functionality whatsoever that "access[es] the code provided by YouTube or YouTube TV webpage" is covered by the IPG license. *See, e.g.* Ex. 8 (excerpts of the June 30, 2020 Deposition of Schonfeld) at 121:21-22; *see also id.* at 102:21-25 ("It is my opinion that the YouTube app and YouTube TV app and their corresponding web services are IPGs under this particular definition in this License Agreement."), 125:18-22 ("[I]f you're accusing a product and

8

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

that product happens to be an IPG, and then you point to various features within that product, then you're—you're still accusing an IPG."). According to Google and its expert, that is true regardless of the functionality actually accused by PMC. *See id.* at 104:18-20 ("One does not have to look at the claims to determine whether it meets an IPG definition under the License Agreement."), 114:11-14 ("[L]ooking at the page as a whole, that page meets the definition of exactly what is required for an IPG."). Thus, Google argues, through Schonfeld, that even though PMC accuses the YouTube "functionality involved in the delivery or transmission of programming content associated with . . . video on demand," Ex. 1, all of YouTube is licensed under the IPG license because "you cannot, sort of bifurcate visually the portions you would like to view as part of the program guide and the portions that are not part of the program guide." Ex. 8 at 112:14-18.

This is the same argument Rovi made, and lost. Like Rovi, Google and Schonfeld ignore that the delivery and transmission of programming through video on demand—the precise YouTube functionality that PMC accuses in this case—was excluded from the IPG license. Nor does Schonfeld's argument that the YouTube player is an IPG application because it provides the viewer certain descriptive information when the viewer uses it to play YouTube videos hold any water, because it cannot be disputed that the "primary purpose" of the YouTube player is to play YouTube videos on demand. *See* Ex. 7 at 31:7-22. Indeed, "any . . . process" (such as playing YouTube programming) is included in the scope of the IPG license "only to the extent that it is used to implement functionality otherwise" licensed. Ex. 1. This issue has already been decided, and Google's attempts to sidestep it with improper expert testimony fall flat.

Google may also argue it is not bound by the prior decisions rejecting its IPG license defense, but under both claim and issue preclusion "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in

9

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

that action." *Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016)

(quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also St. Paul Mercury Ins. Co. v.*

*Williamson*, 224 F.3d 425, 436 (5th Cir. 2000) ("The rules of res judicata encompass two separate

but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel

or issue preclusion.") (citations omitted). Google cannot seriously contest that its defense was

rejected in a final judgment from the same Court before which it now seeks to relitigate this issue.

*See Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287 (5th Cir.1989) (res judicata bars "the

parties to a prior proceeding or those in privity with them from relitigating the same claims that

were subject to a final judgment on the merits by a court of competent jurisdiction"). And "a

judgment may bar a subsequent action by a person who was not a party to the original litigation."

*Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992) (citing *Meza v. Gen. Battery Corp.*, 908

F.2d 1262, 1266 (5th Cir. 1990)). Moreover, the scope of the Rovi IPG license was "actually

litigated" in the prior and lengthy dispute between PMC and Rovi. *Houston Prof'l Towing*, 812

F.3d at 447.

████████████████████████████ "Privity has been described as nothing

more than a 'legal conclusion that the relationship between the one who is a party on the record

and the non-party is sufficiently close to afford application of the principle of preclusion.'"

*Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003) (*citing Southwest*

*Airlines, Inc. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977)). "Privity exists where,

for example, a party's claim is derivative of the original party's claim." *Id.*; *see also Taylor v.*

*Sturgell*, 553 U.S. 880 (2008) ("[N]onparty preclusion may be based on a pre-existing substantive

legal relationship between the person to be bound and a party to the judgment, *e.g.*, assignee and

assignor."); *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 128–29

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

(1912) ("As used when dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the same right of property.").

Here, Google has no direct "legal relationship" as a licensee to PMC's patents;



*See Lall v. Bank of New York*, No. 3:16-CV-3366-L (BF), 2017 WL 4479944, at *5 (N.D. Tex. Apr. 10, 2017) ("Privity, as used in the doctrine of *res judicata*, means mutual or successive relationship to the same rights of property; as testator and executor, ancestor and heir, assignor and assignee, grantor and grantee, lessor and lessee."), *vacated on other grounds sub nom., Lall v. Bank of New York Mellon*, No. 17-11343, 2018 WL 2229335 (5th Cir. Jan. 24, 2018) (citations and quotations omitted); *see also Shore Expl. & Prod. Corp. v. Exxon Corp.*, 976 F. Supp. 514, 523–24 (N.D. Tex. 1997) ("Privity of estate exists by virtue of an assignment of an oil-and-gas lease."); *MCA Records, Inc. v. Charly Records, Ltd.*, 865 F. Supp. 649 (C.D. Cal. 1994) (finding sublicensee was collaterally estopped based on final judgment against sublicensor); *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 394–95 (D. Del. 1989) (a "concurrent interest in [a] patent" likely supports "collateral estoppel" or "res judicata").

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Where Google has no license to PMC's patents apart from ███████████████

████, the judgment against Rovi is conclusive against Google as well. This Court should reject

Google's attempt to relitigate the same issue on a blank slate.

## B.  <u>Google Cannot Sustain its Evidentiary Burden</u>

Even if Google could bring the same, rejected IPG license defense in this case, the Court

should grant summary judgment. First, regardless of whether this Court's prior judgment, and

Judge Folsom's detailed and comprehensive decision made after a full evidentiary hearing, have

preclusive effect in this case, they certainly are persuasive authority showing why there is no

genuine issue of material fact that the accused functionalities in this case are covered by the IPG

license. That is precisely why Google in this case was forced to manufacture new evidence,

through a purported "expert" who simply offers inadmissible legal conclusions that contradict the

weight of the evidence and the prior decisions.

Google's evidence in this case boils down to the opinion of its expert that, looking at the

text of the IPG license and applying its terms to YouTube, YouTube is an IPG and therefore every

part of YouTube is licensed. *See, e.g.*, Ex. 8 at 51:25-53:13 ("I read [Section 1.3 of the Rovi

license] in a particular context and tried to understand whether YouTube and YouTube TV

applications and services would qualify as IPG under this definition. And for that purpose, I did

not find any particular ambiguity and so I cannot point to any particular ambiguity, because none

arose in the context of that analysis."), 76:-11-12 (Schonfeld's opinions are "based on my

understanding of reading the license itself").

There are a number of fatal problems with Google's reliance on this evidence. First, as

further discussed below, Schonfeld's opinion is plainly inadmissible in this case because it is a

flawed legal opinion. Second, Schonfeld's opinion fails to grapple with the record of evidence,

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

including the decision in the arbitration that took place before Judge Folsom, and there is no other "new" evidence or witnesses that Google has raised to date that satisfies its burden to establish a genuine issue of material fact on its license defense. To the extent that Google plans to rely on bits and pieces of testimony from the arbitration, while ignoring the rest, that makes no sense and only serves to emphasize why this Court can—whether under the banner of issue preclusion or due to the persuasive weight of Judge Folsom's analysis and determination of the issue based on a complete record—summarily reject Google's argument.

For example, in his report, Schonfeld excerpts a handful of lines from the arbitration testimony of Mr. Gerald Holtzman, PMC's former president who tragically passed away before this case was filed, that Schonfeld argues shows PMC intended the IPG license to "cover performance of any known feature in the word, so long as the feature is performed with the IPG Application." Ex. 6 ¶ 414 (citing Rovi arbitration testimony from former PMC president Gerald Holtzman). But Mr. Holtzman actually testified ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

Moreover, PMC will be able to introduce the remainder of Mr. Holtzman's testimony for completeness, and his testimony "taken as a whole" unequivocally favored PMC's interpretation of the IPG license. For example, Mr. Holtzman testified at length that ██████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Schonfeld also selectively relies on and misreads a portion of the Rovi arbitration testimony of PMC general counsel Tom Scott, claiming he testified that "Interactive Program Guides are a form of enhanced TV that offer an advanced on-screen display to locate content. Just as people use search engines and portals to locate content on the Web, viewers need powerful IPGs to help them find what they want in regard to television." Ex. 5 ¶ 415. But Mr. Scott in fact testified that

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Google may also point to a document related to ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

        Third, while Schonfeld claims in his "expert" report that the text of the IPG license "unambiguously" demonstrates that the entire YouTube application, from soup to nuts, is covered by the IPG license, his claim ignores that the entire reason PMC and Rovi arbitrated the scope of the IPG license with testimony and evidence was because the Federal Circuit had previously held that the IPG license provision that Google relies on is **ambiguous**. *Personalized Media Commc'ns, L.L.C. v. Rovi Guides, Inc*., 635 F. App'x 909, 914 (Fed. Cir. 2015). No reasonable fact finder could determine that this ambiguity should be resolved in Google's favor, because Google has utterly failed to meet its burden to disclose or develop extrinsic evidence that supports its interpretation of the IPG license. Google did not depose a single Rovi witness, nor did Google disclose any witnesses as relevant to its license defense, or disclose any extrinsic evidence that will support its license defense. *See* Ex. 5. Accordingly, even if this issue were to be tried anew, the only admissible evidence will be PMC's testimony about the IPG license. But at trial, PMC's testimony will be that the IPG license should be interpreted in the manner already ordered in a final judgment by this Court. *See* July 8, 2020 Declaration of Tom Scott (submitted concurrently). Having failed to disclose or develop contrary testimony, Google will have nothing to rebut this.

15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

In short, Google's defense is inconsistent with this Court's prior judgment, its attempt to

relitigate the meaning and scope of the IPG license is precluded, and even if it were not, Google's

complete failure to support its interpretation of this ambiguous agreement is fatal on summary

judgment. *See WH Holdings, L.L.C. v. Ace Am. Ins. Co.*, 574 F. App'x 383 (5th Cir. 2014)

(upholding summary judgment on ambiguous contract where the appellant "failed to show that

there was a fact issue as to whether the extrinsic evidence resolved the ambigu[ity]").

The Court should grant PMC's motion for summary judgment.

## VI.    THE COURT SHOULD EXCLUDE SCHONFELD'S TESTIMONY IN SUPPORT OF GOOGLE'S LICENSE DEFENSE

Google's expert Schonfeld purports to offer expert testimony supporting Google's IPG

license defense. But Schonfeld did not review and consider either the Federal Circuit's decision,

Judge Folsom's arbitration decision, or this Court's final judgment regarding the scope of the IPG

license. Indeed, he **was not even aware of these decisions** at the time he authored his report in

this matter. Ex. 8 at 57:23-63:17, 69:13-75:7, 77:15-79:15, 80:3-83:12. Instead, Schonfeld seeks

to offer the legal conclusion that the purportedly unambiguous interpretation of the IPG license

covers YouTube and supports Google. *Id.* at 51:25-53:13, 76:11-12. Indeed, Schonfeld opined that

his understanding of the IPG definition in the Rovi license was clear, with no ambiguity, *see* Ex.

8 at 51:25-53:13, 76:11-12, even though the Federal Circuit itself had found that very definition to

be ambiguous, *Rovi Guides*, 635 F. App'x at 914. By determining his own understanding of the

license among multiple possibilities, Schonfeld has clearly offered a legal opinion.

Schonfeld's testimony about the IPG license is patently unreliable due to Schonfeld's

failure to consider or even acknowledge the critical evidence on this issue. Not only did Schonfeld

ignore authoritative interpretation of the IPG license by multiple courts, but he also supported his

biased legal opinion with selective quotations from the arbitration record while ignoring the bulk

16

of that record. Ex. 6 ¶¶ 414-16. That record, when considered as a whole by Judge Folsom and summarized in his decision, contradicts Schonfeld's opinions. *See Munoz v. Orr*, 200 F.3d 291, 301–02 (5th Cir. 2000) ("failure to consider" evidence and "common sense skepticism" of the "expert's evaluation" justified exclusion of expert testimony after a motion for summary judgment). Schonfeld's approach is plainly improper, as it not only constitutes a legal opinion, but is also based on a biased selection of evidence.

In any event, it is blackletter law that an expert may not opine on an ultimate issue or offer testimony on legal conclusions. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law."); *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."); *CEATS, Inc. v. TicketNetwork, Inc.*, No. 215CV01470JRGRSP, 2018 WL 457791, at *3 (E.D. Tex. Jan. 17, 2018) (excluding expert testimony on whether certain technical functionality fell within the scope of an agreement).

Schonfeld's testimony about the IPG license consists of an improper attempt to opine on the legal interpretation of the IPG license, and offer his opinion on the ultimate issue of whether Google is licensed under that agreement. *See, e.g.* Schonfeld report ¶ 410 ("In my opinion, the accused YouTube and YouTube TV applications and services are an IPG Application under the definition in Section 1.3"). It should be excluded.

## VII.   CONCLUSION

For the reasons explained above, the Court should grant summary judgment on Google's IPG license defense. In the event it does not, the Court should exclude Schonfeld's unreliable and irrelevant legal opinion regarding Google's IPG license defense.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated:  July 8, 2020                    Respectfully submitted,

                                        By: */s/ Joseph S. Grinstein*

                                            Arun Subramanian
                                            New York State Bar No. 4611869
                                            Tamar Lusztig
                                            New York State Bar No. 5125174
                                            Geng Chen,
                                            New York State Bar No. 5377262
                                            SUSMAN GODFREY L.L.P.
                                            1301 Avenue of the Americas, 32nd Fl.
                                            New York, NY 10019-6023
                                            Telephone: (212) 336-8330
                                            asubramanian@susmangodfrey.com
                                            tlusztig@susmangodfrey.com
                                            gchen@susmangodfrey.com

                                            Joseph S. Grinstein
                                            Texas State Bar No. 24002188
                                            SUSMAN GODFREY L.L.P.
                                            1000 Louisiana, Suite 5100
                                            Houston, TX 77002-5096
                                            Telephone: (713) 653-7820
                                            Fax: (713) 654-6666
                                            jgrinstein@susmangodfrey.com

                                            Meng Xi
                                            SUSMAN GODFREY L.L.P.
                                            1900 Avenue of the Stars, Ste. 1400
                                            Los Angeles, CA 90067
                                            Telephone: (310) 789-3100
                                            Fax: (310) 789-3150
                                            Email: mxi@susmangodfrey.com

                                            Rachel S. Black
                                             SUSMAN GODFREY L.L.P.
                                            1201 Third Avenue, Suite 3800
                                            Seattle, WA 98191
                                            Telephone: (206) 516-3880
                                            Fax: (206) 516-3883
                                            Email: rblack@susmangodfrey.com

                                            S. Calvin Capshaw
                                            Texas Bar No. 03783900

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX LLP
114 E. Commerce Avenue
Gladewater, TX 75647
Telephone: (903) 233-4826
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Dmitry Kheyfits
New York State Bar No. 4743795
KHEYFITS BELENKY LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (212) 203-5399
Email: dkheyfits@kblit.com

Timothy R. DeWitt (*Pro Hac Vice*)
VA Bar No. 40522
24IP LAW GROUP USA, PLLC
424 Fourth Street, Suite C2
Annapolis, MD 21403
Tel.: (410) 212-2539
Fax: (410) 295-5096
Email: tdewitt@24ipusa.com

*Attorneys for Personalized Media
Communications, LLC*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that this document is being filed under seal pursuant to the terms of the

protective order entered in this case because it contains highly confidential information.


*/s/ Tamar Lusztig*
Tamar Lusztig

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 8, 2020, I electronically served the foregoing on all counsel of record via email.

*/s/ Tamar Lusztig*
Tamar Lusztig
