## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>GOOGLE LLC,<br><br>   Defendant. | **Civil Action No. 2:19-cv-00090-JRG**<br><br>**JURY TRIAL DEMANDED**<br><br>███████████████<br>██████████████ |

## DEFENDANT GOOGLE LLC'S *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS OF DR. ZIXIANG XIONG

█████████████████

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ..........................................................................................1

LEGAL STANDARD ...............................................................................................3

ARGUMENT ...........................................................................................................4

I. DR. XIONG'S CONCLUSORY INFRINGEMENT OPINIONS ARE INADMISSIBLE UNDER *DAUBERT* ...................................................................4

   A. The Xiong Report Provides Nothing More Than Conclusory Affirmative Infringement Opinions That Are Inadmissible Under *Daubert* ...................................4

   B. Dr. Xiong's Claim Charts Consist Only Of Conclusory Infringement Allegations Accompanied by Unexplained Citations To "Evidence" .......................................5

   C. By Setting Forth Only Conclusory Infringement Opinions, Dr. Xiong's Report Fails To Comply With Federal Rule Of Civil Procedure 26(a)(2)(B) ............................12

II. DR. XIONG APPLIES INCORRECT LEGAL STANDARDS FOR DIRECT AND INDIRECT INFRINGEMENT, RENDERING HIS OPINIONS UNHELPFUL TO THE JURY AND THUS ALSO INADMISSIBLE UNDER *DAUBERT* .......................................12

CONCLUSION .......................................................................................................14

███████████████

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc)........................................................................ 13

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)...................................................................................................... 14

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...................................................................................................*passim*

*Elder v. Tanner*,
    205 F.R.D. 190 (E.D. Tex. 2001)...................................................................................... 12

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)............................................................................................................ 5

*In re Compl. of C.F. Bean L.L.C.*,
    841 F.3d 365 (5th Cir. 2016) .............................................................................................. 5

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008).......................................................................................... 4

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014).......................................................................................................... 14

*Sierra Club v. Cedar Point Oil Co.*,
    73 F.3d 546 (5th Cir. 1996) ................................................................................................ 4

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497-TJW-CE, 2010 WL 8368082 (E.D. Tex. Dec. 14, 2010)...................... 5

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014).......................................................................................... 5

**Rules**

FED. R. CIV. P. 26(a)(2)(B) ................................................................................................ 1, 3-4, 12

FED. R. EVID. 702............................................................................................................... *passim*

███████████████████████████████

## NOTE ON CITATIONS

- References to exhibits, indicated by the abbreviation "Ex.," followed by the exhibit number, refer to the Declaration of Felipe Corredor in Support of Defendant Google LLC's *Daubert* Motion to Exclude Expert Opinions of Zixiang Xiong, filed concurrently herein.  The exhibit number is followed by brackets containing a brief description of the exhibit for the Court's convenience, in accordance with the following naming convention:

  - "Xiong Rp." refers to the Expert Report of Dr. Zixiang Xiong Regarding Infringement of U.S. Patent Nos. 7,747,217, 7,769,344, 8,601,528, and 8,739,241 by Google, dated May 18, 2020.

  - "Xiong Rp. App." refers to Appendices A, B, C, and D to the Expert Report of Dr. Zixiang Xiong Regarding Infringement of U.S. Patent Nos. 7,747,217, 7,769,344, 8,601,528, and 8,739,241 by Google, dated May 18, 2020.

  - "PMC Interrogatory Resp." refers to Plaintiff's Second Supplemental Objections and Responses to Google LLC's Interrogatories (No. 3), dated May 3, 2020, and Exhibits A through D thereto.

  - "Xiong Tr." refers to the transcript of the June 26, 2020 deposition of Dr. Zixiang Xiong.

  - "Grinstein Email" refers to the June 10, 2020 email from Joseph Grinstein, counsel for PMC, to Miles Freeman, counsel for Google.

- "PMC" refers to Plaintiff Personalized Media Communications, LLC.

- "The '217 patent" refers to U.S. Patent No. 7,747,217, which is attached as Exhibit A to the Complaint.  Dkts. 1-1 & 1-2.

- "The '344 patent" refers to U.S. Patent No. 7,769,344, which is attached as Exhibit B to the

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Complaint.  Dkts. 1-3 & 1-4.

- "The '528 patent" refers to U.S. Patent No. 8,601,528, which is attached as Exhibit D to the Complaint.  Dkts. 1-7 & 1-8.

- "The '241 patent" refers to U.S. Patent No. 8,739,241, which is attached as Exhibit E to the Complaint.  Dkts. 1-9 & 1-10.

- The '217, '344, '528, and '241 patents are collectively referred to as the "Asserted Patents."

████████████████████████████████████

Defendant Google LLC ("Google") moves to exclude unsupported and conclusory opinions set forth in the Expert Report of Dr. Zixiang Xiong Regarding Infringement of U.S. Patent Nos. 7,747,217, 7,769,344, 8,601,528, and 8,739,241 by Google ("Xiong Report"). Ex. A (Xiong Rp.). The opinions Dr. Xiong set forth in his expert report regarding why Google allegedly infringes the four asserted patents are cursory and consist merely of a long regurgitation of "evidence" in the form of unadorned screenshots from documents and excerpts from deposition transcripts and, in a few instances, from source code. But Dr. Xiong provides no analysis, commentary, or even explanation as to how this evidence supports his infringement positions. The entirely conclusory nature of Dr. Xiong's opinions renders them unreliable and makes them of no help to the jury. Worse still, Dr. Xiong applies incorrect legal standards for direct and induced infringement. These opinions fail the standards set by both *Daubert* and Federal Rule of Evidence 702 as well as those set by Federal Rule of Civil Procedure 26(a)(2)(B). Thus, his testimony should be excluded.

## FACTUAL BACKGROUND

PMC submitted the Xiong Report on May 18, 2020. The Xiong Report takes up 389 paragraphs spanning 129 pages. Of those, only paragraphs 128-173, spanning a mere 13 pages, set forth Dr. Xiong's affirmative infringement opinions. Ex. A (Xiong Rp.), § IX. This section of the Xiong Report contains, for each of the four asserted patents, three paragraphs setting out Dr. Xiong's opinions on infringement of those patents.

These three paragraphs follow a simple, essentially identical formula for each of the four asserted patents. In the first paragraph, Dr. Xiong opines that Google infringes by providing the accused functionality as part of the accused products. *E.g.*, Ex. A (Xiong Rp.) ¶ 128 ████████

1

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████    █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████    *see also id.* ¶¶ 143, 148, 162 (expressing opinion as to the remaining '344, '528, and '241 patents in similar language).   In the second paragraph, Dr. Xiong opines that Google directly infringes, cursorily explaining that Google provides either the operating system or the YouTube player.  *Id.* ¶¶ 129, 144, 149, 163.  And, in the third paragraph, Dr. Xiong opines that Google also indirectly infringes by actively inducing infringement by YouTube end users. *Id.* ¶¶ 130, 145, 150, 164.   In sum, Dr. Xiong's analysis of infringement of each of the four asserted patents in his report is thus nearly identical.

The remaining paragraphs of Section IX of the Xiong Report, purportedly setting forth Dr. Xiong's affirmative infringement opinions, contain no substantive analysis.   Instead, the Xiong Report references separate attached claim charts.  Ex. B (Xiong Rp. App.); *see also* Ex. A (Xiong Rp.), § X (consisting of a single paragraph referencing attached claim charts).

That is the entire sum of Dr. Xiong's affirmative infringement analysis in the body of his report.   Rebuttal of Google's non-infringement arguments follows in Section XI of the Xiong Report.  *See id.* ¶¶ 175-386.

As to the claim charts Dr. Xiong references as supporting his affirmative infringement opinions, they each consist of hundreds of pages of screenshots of documents and excerpts of deposition testimony and some source code cited in support of Dr. Xiong's infringement

opinions. Ex. B (Xiong Rp. App.). Explanation for how that cited evidence demonstrates infringement of each claim limitation is, by contrast, limited to, at most, a sentence or two. As will be explained in more detail with respect to exemplary claim limitations below, in most instances, Dr. Xiong does little more than restate the claim language itself. At no time does he provide any explanations that connect the cited evidence with the alleged infringement. Yet, at deposition, Dr. Xiong confirmed that "every opinion" he has "is laid out in the report, which includes [the] opening report and the four appendices." Ex. D (Xiong Tr.) at 110:13-15. Notably, Dr. Xiong's claim charts contain nearly verbatim language as the language used in claim charts attached to PMC's interrogatory response on infringement. *Compare* Ex. B (Xiong Rp. App.), *with* Ex. C (PMC Interrogatory Resp.).

## **LEGAL STANDARD**

Federal Rule of Evidence 702 provides that an expert witness with "scientific, technical, or other specialized knowledge" may testify in the form of an opinion only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The trial court is tasked as gatekeeper to determine whether proffered expert meets this standard. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

In addition, witnesses proffered as experts under Federal Rule of Evidence 702 are required to submit an expert report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). As the Fifth Circuit has noted, this requires expert reports to be "detailed and

3

complete" so as "to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (citations omitted); *see also, e.g.*, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373-74 (Fed. Cir. 2008).

## ARGUMENT

**I.    DR. XIONG'S CONCLUSORY INFRINGEMENT OPINIONS ARE INADMISSIBLE UNDER *DAUBERT***

**A.    The Xiong Report Provides Nothing More Than Conclusory Affirmative Infringement Opinions That Are Inadmissible Under *Daubert***

As discussed above, Dr. Xiong's affirmative infringement opinions for each asserted patent are found in only two places: (1) in three paragraphs for each asserted patent in Section IX of the Xiong Report; and (2) in the claim charts attached to the Xiong Report. As set forth in both places, however, the conclusory nature of these opinions demonstrates that Dr. Xiong's opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue" and that his opinion is not the result of "reliably appl[ying] [reliable] principles and methods to the facts of the case." FED. R. EVID. 702.

As to the body of the Xiong Report, the three paragraphs Dr. Xiong provides with any substance regarding his affirmative infringement opinions merely represent his conclusions. As to each asserted patent, the first such paragraph outlines Dr. Xiong's conclusion regarding what accused functionality in which accused products allegedly infringe. Ex. A (Xiong Rp.) ¶¶ 128, 143, 148, 162. The second paragraph for each asserted patent outlines Dr. Xiong's conclusion that Google directly infringes each asserted patent by providing operating system software or YouTube player software. *Id.* ¶¶ 129, 144, 149, 163. And the third paragraph similarly outlines Dr. Xiong's conclusion that Google indirectly infringes each asserted patent by actively inducing infringement by YouTube end users. *Id.* ¶¶ 130, 145, 150, 164. None of the paragraphs explain

4

what principles or methodology he applied or what facts he relied upon to reach the conclusions set forth in those paragraphs.

Reading the twelve paragraphs of the Xiong Report in which Dr. Xiong sets forth his affirmative infringement opinions leaves one with the distinct impression that he is setting out nothing more than his "subjective belief or unsupported speculation," in violation of Rule 702 and *Daubert.* 509 U.S. at 590. The conclusory nature of Dr. Xiong's affirmative infringement opinions makes them inadmissible. Indeed, numerous courts have found that conclusory expert opinions are excludable under *Daubert*. *See, e.g.*, *In re Compl. of C.F. Bean L.L.C.*, 841 F.3d 365, 370-71 (5th Cir. 2016) (holding that "[a] district court does not abuse its discretion by excluding this kind of conclusory opinion" wherein allegations were "connected to existing data only by the *ipse dixet* of the expert" (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))); *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2010 WL 8368082, at *1 (E.D. Tex. Dec. 14, 2010) (granting *Daubert* motion in part "because [] expert report only offered conclusory opinions on whether the prior art anticipated or made obvious the asserted claims," including "conclusory opinions that the claims cover intermediate bus architecture ('IBA') and that the prior art does not anticipate or make obvious IBA"). *Cf. VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014) (holding that "conclusory assertions [by an expert] cannot form the basis of a jury's verdict" (citing *Joiner*, 522 U.S. at 146)).

B.    Dr. Xiong's Claim Charts Consist Only Of Conclusory Infringement Allegations Accompanied by Unexplained Citations To "Evidence"

Dr. Xiong's claim charts do not save his infringement opinions. As discussed in the Factual Background section above, the claim charts consist almost entirely of screenshots of documentary evidence and excerpts of source code and deposition testimony. Indeed, Dr. Xiong titled the section of his claim charts in which the only text other than the patent claims appears as

"Evidence of Infringement"—not "Infringement Opinions" or the like.  A handful of sentences accompany each limitation.  These sentences consist of the only explanation of how that cited evidence demonstrates infringement of each claim limitation.

For example, for the '217 patent, as to claim limitation 1[e], Dr. Xiong provides over eight pages of evidence.  Ex. B (Xiong Rp. App.), App. A at 36-44.  This limitation reads: "wherein determining content of each medium comprises: processing an identifier which identifies said content of each of said medium: comparing said processed identifier to a predetermined identifier, wherein said predetermined identifier is determined at a time prior to receiving said plurality of signals."  *Id.* at 36.  To show how the Accused Products allegedly "determin[e] content of each medium" in accordance with this claim limitation, Dr. Xiong begins his claim chart by merely restating the claim language:  "Google's determining content of each medium comprises processing an identifier which identifies said content of each of said medium, comparing said processed identifier to a predetermined identifier, wherein said predetermined identifier is determined at a time prior to receiving said plurality of signals."  *Id.*  Dr. Xiong then states:



███████████████████████████████████████████

- ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████

- ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████

- ███████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

Regarding the '528 patent, claim limitation 32[f] ("wherein said receiver station clears the incomplete television image data based on said information at least one of included in and received with said television signal") is exemplary. The entirety of Dr. Xiong's "[e]vidence of [i]nfringement" for this limitation is:



8

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████

██████████████████████████████████████████████████████████████████████

█████████████████████████████   ████████████████████████████████ it is impossible to even determine what functionality Dr. Xiong is accusing of infringing this limitation.

Dr. Xiong's unreliable opinions on the '528 patent don't end there, as dependent claims 23 and 39 further exemplify the unreliability of his infringement opinions. As to claim 23, which requires "wherein said receiver station further includes a digital detector operatively connected to said processor, said method further comprising the step of: detecting at least one datum in said information transmission designating a specific television image," Dr. Xiong's complete opinion is:



██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████    *Id.*    And, as to claim 39, which requires "said method further comprising the step of: transmitting only part of said television programming," Dr. Xiong cites only two documents—████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████



Recognizing the deficient nature of these "opinions," on the parties' June 8, 2020 meet and confer regarding these issues, PMC's counsel represented that Dr. Xiong would try to explain at trial how his cited screenshots relate to the alleged infringement even though those opinions appear nowhere in Dr. Xiong's report or in his accompanying claim charts. Ex. E (Grinstein Email), 2. Dr. Xiong, however, testified that he has no opinions beyond what is in his report. Ex. D (Xiong Tr.) at 110:13-15.

Finally, as to the '241 patent, claim limitations 22[d] ("storing identification information at said intermediate transmitter station, said identification information designating programming to be transmitted") and 22[e] ("said second signal including a control signal for controlling said receiver station") also demonstrate the unreliability of Dr. Xiong's opinions. Ex. B (Xiong Rp. App.), App. D at 42-54. Dr. Xiong explains his over 12 pages of cited evidence regarding these two limitations in two passages. First, as to limitation 22[d], he states only:



10



*Id.* at 42.  And, as to limitation 22[e], Dr. Xiong says:



*Id.* at 46.  Nowhere does Dr. Xiong explain how any of the information he identifies as a "control signal" "control[s] said receiver station" as required by the claim.  This failure to connect the cited evidence to the claim's requirements renders his opinion on the '241 patent unreliable and unhelpful to the jury.

Not only did Dr. Xiong fail to connect his cited evidence to the infringement opinions in his report, he also failed to do so at his deposition.  For example, Dr. Xiong could not identify what specific devices were encompassed by his infringement opinions.  Ex. D (Xiong Tr.), 49:3-53:16.  Similarly, Dr. Xiong was unable to explain which operating systems his infringement opinions relate to.  *Id.* at 65:5-69:23.  As he did at other times during his deposition, Dr. Xiong declined to explain the bases for his opinions beyond what he wrote in his expert report.  *Id.* at 53:15-16 ███████████████████████████████ *id.* at 69:22-23 ████████████████████████████ *see also, e.g.*, *id.* at 110:13-15

Because of Dr. Xiong's conclusory infringement opinions regarding each of the Asserted Patents, those opinions do not clear *Daubert* or Rule 702's requirements that expert testimony be reliable and helpful to the jury.  Dr. Xiong's infringement opinions should thus be excluded.

11

C. By Setting Forth Only Conclusory Infringement Opinions, Dr. Xiong's Report Fails To Comply With Federal Rule Of Civil Procedure 26(a)(2)(B)

The conclusory nature of Dr. Xiong's report and supporting claim charts also fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B), which requires "a complete statement of all opinions the witness will express and the basis and reasons for them."  FED. R. CIV. P. 26(a)(2)(B)(i).  This Court has struck expert opinions contained in reports that fail to "contain some discussion of their reasoning and thought process that lead to their ultimate opinions" in a case analogous to the instant case.  *Elder v. Tanner*, 205 F.R.D. 190, 192-94 (E.D. Tex. 2001).  Like Dr. Xiong, the experts in *Elder* merely "set[] forth their ultimate opinion on a particular patent claim," "followed by listing Plaintiffs' claim at issue, which, in turn, is followed by a statement that enumerates the basis for each expert's opinion" by citing evidence supporting their infringement opinions.  *Id.* at 192.  Although "these disclosures communicate each expert's ultimate opinions and the authorities and evidence upon which they rely," their conclusory nature fail to comply with the requirements set forth in the Federal Rule of Civil Procedure.  *Id.*

For the same reasons why Dr. Xiong's opinions fail to pass muster under *Daubert*, they also fail to comply with Rule 26(a)(2)(B)(i) and must be struck on that basis as well.  Indeed, the only way Dr. Xiong's opinions can be of any help to the jury is if he improperly testifies beyond the scope of his expert report.

## II. DR. XIONG APPLIES INCORRECT LEGAL STANDARDS FOR DIRECT AND INDIRECT INFRINGEMENT, RENDERING HIS OPINIONS UNHELPFUL TO THE JURY AND THUS ALSO INADMISSIBLE UNDER *DAUBERT*

Dr. Xiong's affirmative infringement opinions are excludable under *Daubert* for another, independent reason.  Specifically, his opinion on direct and indirect infringement apply an incorrect legal standard, thereby rendering his opinion not helpful to the jury's determination of whether Google infringes the Asserted Patents.  FED. R. EVID. 702.

12

First, as to direct infringement, Dr. Xiong opines that ████████████████████ ██████████████████████████████████████████████████████ *Id.* ¶¶ 129, 144, 149; *see also id.* ¶ 163. But, despite acknowledging that "in order to infringe a method claim, *the accused infringer* must perform each claimed step either literally or under the doctrine of equivalents (*id.* ¶ 27 (emphasis added)), each such paragraph identifies *user actions* as part of the reason for Google's direct infringement. *Id.* ¶ 129 ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████ But, for Google to directly infringe the asserted method claims, it must perform all steps, direct or control others to do so, "condition[] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method," or be part of a joint enterprise. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015) (en banc). Nowhere does Dr. Xiong opine that the users are part of Google, controlled by Google, in a joint enterprise with Google, or that Google conditions users' receipt of YouTube on their performance of any step. In fact, Dr. Xiong testified at deposition that the "user" he refers to in those paragraphs could be *any* user. Ex. D (Xiong Tr.), 84:8-85:25, 90:11-91:24, 94:18-95:17, 96:25-97:17. Indeed, Dr. Xiong testified, contrary to the applicable legal standard, that Google need not perform all steps—for example, ██████████████████████████ *Id.* at 82:17-25; *see id.* at 81:19-84:4.

Second, as to indirect infringement, nowhere does Dr. Xiong identify direct infringement by any user or that Google knows about any such infringement. Ex. A (Xiong Rp.) ¶¶ 130, 145,

13

150, 164.  Dr. Xiong confirmed this failure to identify any direct infringer whose infringement Google knows about and induces at his deposition.  Ex. D (Xiong Tr.) at 87:22-90:4, 92:2-93:15, 95:18-96:19, 97:19-98:25.  In fact, when asked what the underlying acts of direct infringement are in as expressed were that Google induced, Dr. Xiong confusingly referred to his direct infringement allegations **against Google**.  *Id.* at 88:3-19.  And, when asked whether he understood that a claim of inducement required an underlying act of direct infringement, Dr. Xiong claimed that he could not answer that question as he is ▮▮▮▮▮▮ *Id.* at 87:3-20.  But induced infringement requires both direct infringement by another, *see Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921-22 (2014), and that the accused indirect infringer "knew of the patent and that 'the induced acts constitute patent infringement,'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (citation omitted).  Dr. Xiong's failure to identify a direct infringer or opine on any direct infringement underlying his opinions of induced infringement by Google render his opinions excludable under *Daubert* because they cannot be helpful to the jury's determination of infringement.

## CONCLUSION

For the reasons set forth above, Google respectfully requests that the Court grant this motion to exclude the infringement opinions of Dr. Xiong.

14

Dated: July 8, 2020

Respectfully submitted,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
David A. Perlson
davidperlson@quinnemanuel.com
Carl G. Anderson
carlanderson@quinnemanuel.com
Felipe Corredor
felipecorredor@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Mark Yeh-Kai Tung
marktung@quinnemanuel.com
Andrew Bramhall (*pro hac vice*)
andrewbramhall@quinnemanuel.com
Olga Slobodyanyuk (*pro hac vice*)
olgaslobodyanyuk@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel : 650-801-5000
Fax: 650-801-5100

Nima Hefazi (*pro hac vice*)
nimahefazi@quinnemanuel.com
Miles D. Freeman
milesfreeman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

James Mark Mann
mark@themannfirm.com
Gregory Blake Thompson
blake@themannfirm.com
MANN TINDEL & THOMPSON
300 W. Main

15

Henderson, TX 75652
Tel: 903-657-8540
Fax: 903-657-6003

*Attorneys for Google LLC*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), the undersigned hereby certifies that counsel for the parties conducted a meet-and-confer regarding this Motion prior to filing. Specifically, on July 6, 2020, counsel for Google (Mark Tung, Miles Freeman, and Nima Hefazi) participated in a telephonic conference with counsel for PMC (Joseph Grinstein, Meng Xi, and Elizabeth DeRieux) regarding the issues raised herein but the parties were unable to resolve their dispute. Thus, this Motion is opposed.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule CV-5(c), the undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via email on July 8, 2020.

*/s/ Felipe Corredor*
Felipe Corredor

17