FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC<br><br>    Plaintiff,<br><br>v. | |
| GOOGLE LLC. | Case No.: 2:19-cv-90-JRG |

**PLAINTIFF PERSONALIZED MEDIA COMMUNICATIONS, LLC'S
<u>RULE 59 MOTION FOR NEW TRIAL</u>**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD............................................................................................................. 2

ARGUMENT.......................................................................................................................... 3

    I.   A New Trial Is Warranted Due to Google's Misstatement and Contradiction of the Court's Claim Construction Order...................................................................................... 3

        a.     Google's Express Contradiction of this Court's Claim Construction of Medium/Media Warrants a New Trial.................................................................. 4

        b.     Google Back-Doored Its Rejected "On a Schedule" Limitation of "Television Programming" into the Trial in Violation of MIL 5 ............................................... 6

    II.  A New Trial Is Warranted Due to Google's Trial Tactics as a Whole .............................. 8

        a.     Google's Mischaracterizations of PMC's Patented Technology ........................... 9

        b.     Google's "Empty Chair" Argument...................................................................... 11

CONCLUSION..................................................................................................................... 14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaniz v. Zamora-Quezada*,
591 F.3d 761 (5th Cir. 2009) ...................................................................................................8, 15

*Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.*,
No. CV 12-2706, 2017 WL 758335 (D. Minn. Feb. 24, 2017) ............................................3, 4

*Carson v. Polley*,
689 F.2d 562 (5th Cir. 1982) .......................................................................................................2

*Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*,
102 F. Supp. 3d 740 (D. Md. 2015) .............................................................................................3

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
No. 2:13-CV-1112-JRG, 2015 WL 4944514 (E.D. Tex. Aug. 19, 2015), *aff'd
sub nom. ContentGuard Holdings, Inc. v. Apple Inc.*, 701 F. App'x 957 (Fed.
Cir. 2017) .....................................................................................................................................4

*Cytologix Corp. v. Ventana Med. Sys.*,
424 F.3d 1168 (Fed. Cir. 2005).................................................................................................3, 6

*Edwards v. Sears, Roebuck & Co.*,
512 F.2d 276 (5th Cir. 1975) ..................................................................................................9, 15

*EMC Corp. v. Pure Storage, Inc.*,
154 F. Supp. 3d 81, 99 (D. Del. 2016).........................................................................................3

*Exergen Corp. v. Wal–Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)................................................................................................3, 6

*Hall v. Freese*,
735 F.2d 956 (5th Cir. 1984) .......................................................................................................8

*Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*,
772 F.3d 1031 (5th Cir. 2014) .....................................................................................................2

*Houston v. Estelle*,
569 F.2d 372 (5th Cir. 1978) .....................................................................................................14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012).....................................................................................................15

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006).................................................................................................3, 8

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Mills v. Beech Aircraft Corp.*,
  886 F.2d 758 (5th Cir. 1989) ..................................................................................8

*Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*,
  848 F.2d 613 (5th Cir. 1988) ...........................................................................14, 15

*Personal User Model LLP v. Google Inc.*,
  No. CV 09-525-LPS, 2014 WL 807736 (D. Del. Feb. 27, 2014) ..............................6

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
  324 F.3d 1346 (Fed. Cir. 2003)..............................................................................2

*Smith v. Transworld Drilling Co.*,
  773 F.2d 610 (5th Cir. 1985) ..................................................................................2

*Synqor, Inc. v. Artesyn Techs., Inc.*,
  No. 2:07-CV-497-TJW-CE, 2011 WL 3625036 (E.D. Tex. Aug. 17, 2011) ...........12

*United States v. Cisneros*,
  491 F.2d 1068 (5th Cir. 1974) ..............................................................................14

*Wallner v. Ziegler*,
  470 F. App'x 230 (5th Cir. 2012) ..........................................................................14

*Whitehead v. Food Max of Mississippi, Inc.*,
  163 F.3d 265 (5th Cir. 1998) ................................................................................15

*Winter v. Brenner Tank, Inc.*,
  926 F.2d 468 (5th Cir. 1991) ..................................................................................8

## Other Authorities

Fed. R. Civ. P. 59(a) ..................................................................................................2

Fed. R. Civ. P. 59(a)(1)(A) .........................................................................................2

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**INTRODUCTION**

Google violated this Court's rules throughout the trial in this case. It repeatedly undermined the Court's claim constructions and denigrated PMC's patents as antiquated by comparing Google's YouTube service ***not to the claims***, but rather to the embodiments and examples in the *specification*. The Court, understanding just how prejudicial such arguments can be, made it clear at the *limine* stage that these tactics would not be permitted. But Google violated the orders anyway, construing "medium"/"media" and "television programming" in accordance with Google proposals that the Court *rejected* months ago, instead of the constructions actually adopted by the Court. Google's message about PMC's technology was likewise inappropriate: After declaring in its opening statement that "[t]hese patents are old 1981 inventions, and they don't apply to the sophisticated Internet we have today," Google repeatedly called back to this argument for the rest of the trial. 11/2/2020 Tr. at 179:21-23; *see also, e.g.*, 11/6/2020 Tr. at 985:10-25 ("How many times do they talk about the Internet? Zero. How many times do they talk about online streaming? Zero. World Wide Web? Zero.").

Google also violated another Court ruling prohibiting commentary on the absence of witnesses, going so far as to show the jury an "empty chair" slide in closing. *See* 11/6/2020 Tr. at 983:10-13 ("[T]here was a lot of pictures of Mr. Harvey, Mr. Cuddihy, these inventors that were so brilliant. They didn't bring them to trial, did they? . . . I'll let you think about that and wonder why they didn't bring them here."). Not only did Google disparage the inventors directly for not testifying (though Google chose not to designate their depositions), it also exploited their absence to reinforce once again its ongoing theme that the patents were too "old" to be infringed by YouTube. *See id.* at 983:11-13 ("They could come here and told you about their inventors and explained, oh, these cover more than just television from the 1980s. These cover the Internet.").

In a complex case where the jury would have understandably searched for simple

1

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

arguments to latch onto, Google repeatedly subverted this Court's rulings, prejudiced the jury against the patents as old and antiquated, and wrongly painted the inventors as unable or unwilling to defend them. It deployed a deliberate trial strategy to distract the jury's attention from the actual issue in dispute, *i.e.*, whether YouTube practices each step of the asserted claims. A new trial, held in accordance with the rules laid down by the Court, is the only remedy adequate to cure these serious violations.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 59(a), a court may grant a new trial "after a jury trial, for any reason for which a new trial has been heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In the Fifth Circuit, a new trial may be granted "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *see also Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003) (noting that Rule 59(a) motions are governed by the law of the regional circuit). Courts have granted such motions on the basis of counsel's conduct during trial, including presentation of prejudicial information to the jury. *See, e.g., Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031, 1034 (5th Cir. 2014) (affirming grant of new trial after counsel improperly elicited testimony concerning a prior settlement demand, in violation of a motion in limine); *Carson v. Polley*, 689 F.2d 562, 569 (5th Cir. 1982) (affirming grant of new trial after previously excluded exhibits were inadvertently included in box of exhibits available to the jury during deliberations).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## ARGUMENT

**I.**     **A New Trial Is Warranted Due to Google's Misstatement and Contradiction of the Court's Claim Construction Order**

"Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." *Exergen Corp. v. Wal–Mart Stores, Inc*., 575 F.3d 1312, 1321 (Fed. Cir. 2009). "No party may contradict the court's construction to a jury." *Id.* Further, presentation of conflicting claim constructions to a jury is improper, ***even if the district court's instructions make it clear that the district court's constructions control***. *Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("The risk of confusing the jury is high when experts opine on claim construction before the jury even when, as here, the district court makes it clear to the jury that the district court's claim constructions control."). Indeed, this Court's ruling on PMC's Motion in Limine No. 5 ("MIL 5") expressly prohibited any suggestion that the construed claim terms have any meaning other than that provided in the Court's claim construction order. Dkt. 343 at 3.

Expert testimony that reasserts a limitation specifically considered by the court during claim construction, and not adopted, ***contradicts*** the court-ordered claim construction. For example, in *EMC Corp. v. Pure Storage, Inc*., the court noted that it had previously "rejected [defendant's] proposals to limit" a particular term, and therefore it excluded the expert's opinions regarding those additional limitations. 154 F. Supp. 3d 81, 99 (D. Del. 2016) (citing *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n. 2 (Fed. Cir. 2006)); *see also Changzhou Kaidi Elec. Co. v. Okin Am., Inc*., 102 F. Supp. 3d 740, 749 (D. Md. 2015) (finding expert testimony improper where it retread a limitation even though "[t]he court specifically rejected that interpretation in its memorandum on claim construction" and "refused to endorse" it); *Bombardier Recreational Prod. Inc. v. Arctic Cat Inc*., No. CV 12-2706 (JRT/LIB), 2017 WL 758335, at \*10

3

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

(D. Minn. Feb. 24, 2017) (excluding expert testimony about a previously proffered limitation that the court had "explicitly rejected"); *cf. ContentGuard Holdings, Inc. v. Amazon.com, Inc*., No. 2:13-CV-1112-JRG, 2015 WL 4944514, at *4 (E.D. Tex. Aug. 19, 2015) ("[A]ll experts are hereby excluded from providing any opinions based on an interpretation of the Court's construction *that is the equivalent of any construction that the Court previously considered and expressly rejected*." (emphasis added)), *aff'd sub nom. ContentGuard Holdings, Inc. v. Apple Inc*., 701 F. App'x 957 (Fed. Cir. 2017).

### a.     Google's Express Contradiction of this Court's Claim Construction of Medium/Media Warrants a New Trial

Prior to trial this Court construed "medium" and "media," as used in Claim 16 of the '217 Patent, to mean "channel[s] of communication, such as radio, television, newspaper, book, or Internet." Dkt. No. 185 at 53. Although Google proposed the limitation that "Internet is a single form of media," *id.* at 48-50, this Court did not adopt it, and nothing in the term's Court-ordered construction suggests that the first and second media cannot be of the same form or type, such as two radio channels, two television channels, or two Internet channels. In fact, the '217 expressly teaches embodiments with multiple channels of the same type. *See, e.g.*, '217 at 129:3-7 (disclosing "multi-channel cable transmission" of "four channels of conventional television programming and two conventional FM radio signals"); FIG. 2D (depicting decoders 27, 28, and 29, each of which "may be a TV signal decoder," "radio signal decoder," or "another signal decoder," depending on the nature of the selected frequency inputted," '217 at 20:53-56).

Nonetheless, at trial, Google repeatedly argued its rejected limitation to the jury. As early as its opening statement, Google contradicted the Court's claim construction, telling the jury "[f]or this element, there's no infringement. There's no two media being combined. It's *just the Internet*." 11/2/20 Tr. at 189:12-14 (emphasis added). Through its expert, Google presented

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

testimony also that expressly contradicted the Court's construction:

> For example, if you have a television system, that is another channel of communication. It's another example under the Court's construction. But whether you have two different television signals from two different stations, or one, in both cases, **it's one channel of communication, television as specifically stated under the Court's construction**.

11/5/20 Tr. at 711:4-10 (emphasis added); *see also id.* at 710:7-19 (opining to the jury that a "medium" is really "the way in which we communicate," which cannot be "the same" way). The Court's construction of "medium" and "media" does not "specifically state[]" nor even imply that two television channels are "one channel of communication," and in fact, having considered and rejected that limitation from Google, the Court adopted a construction that, consistent with the disclosures in the '217, permitted multiple Internet channels. Dr. Schonfeld even conceded that Google uses two channels of communication, *id.* at 709:9 ("It does come from two different servers, yes."), but nonetheless misled the jury by telling them, "there cannot be infringement if everything goes over . . . one method of communication," *id.* at 709:1-4; *see also id.* at 708:11-23 (purporting to "appl[y] the Court's construction," which has no limitation regarding "everything go[ing] over the Internet"). That testimony in hand, Google went on to urge in its closing statement that the jury find non-infringement on the basis of Google's previously proffered **and rejected** limitation. *See, e.g.*, 11/6/20 Tr. at 987:3-988:10 ("[W]hat the—PMC is pointing to uses the same medium, the Internet. Not two different medium.").

A party's presentation of evidence contradicting a court-ordered claim construction is error even where the district court provides a curative instruction that its own constructions—and not a party's contrary arguments—control. Here, Google repeatedly introduced testimony and attorney

5

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

argument contrary to the Court's construction, misleading the jury.[1] *See, e.g., Exergen*, 575 F.3d at 1320-21 (reversing jury's infringement finding after plaintiff argued that the accused product, a thermometer that measured oral temperature, infringed because "an oral temperature is an internal temperature," contradicting the construction that "internal temperature" meant "temperature of the region existing beneath the surface of the biological tissue targeted for measurement"). In *CytoLogix*, the Federal Circuit held that expert testimony at trial "opin[ing] on claim construction before the jury" and counsel's "argu[ing] conflicting claim constructions to the jury" were "improper" due to the high "risk of confusing the jury." 424 F.3d at 1172. That was so even where the district court had "ma[de] it clear to the jury that the district court's claim constructions control." *Id.* This Court likewise instructed the jury that the Court's constructions would control, *see, e.g.*, 11/2/20 Tr. at 137:20-38:9, but Google's trial presentation, which repeatedly and persistently flouted the Court's construction by proffering a previously rejected limitation to the jury, was nonetheless prejudicial error due to the high degree of risk that it would mislead the jury to improperly find non-infringement based not on the Court's construction, but on Google's. *See CytoLogix*, 424 F.3d at 1172.

> **b.   Google Back-Doored Its Rejected "On a Schedule" Limitation of "Television Programming" into the Trial in Violation of MIL 5**

The term "television programming" is used in multiple claims at issue in this case. During claim construction, Google argued that "television programming" should be construed to mean "video and any associated audio information transmitted ***in accordance with a television***

---

[1] This isn't Google's first attempt to improperly revisit its previously rejected constructions. In *Personal User Model LLP v. Google Inc.*, Google argued during claim construction that "specific" meant "unique," such that "each individual user has a different User Model that is unique to that individual user." No. CV 09-525-LPS, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014). The Court did not adopt that limitation. *See id.* Google nonetheless sought to introduce expert testimony that "'specific' must be 'exclusive to a user.'" *Id.* Because that testimony was "inconsistent with the Court's claim construction," it was excluded from the trial. *Id.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*schedule.*" Dkt. No. 185 at 18 (emphasis added). The Court rejected Google's proposal, instead construing "television programming" to mean "video and any corresponding audio content, at least a portion designed for multiple recipients, that is transmitted electronically." Dkt. No. 185 at 21. Notably, nothing in the claims or in the Court's claim construction require that video be transmitted in accordance with any schedule or to multiple recipients *simultaneously*.

> Google's expert readily agreed that YouTube videos can be watched by multiple viewers:
>
> Q. And you would agree that every YouTube video can be watched by multiple recipients, correct?
>
> A. Yeah, it can be seen by multiple -- it can be watched by multiple recipients, I agree.

11/4/20 Tr. at 786:19-22; *see also* 11/4/20 Tr. at 580:16-22 (Google witness Dr. Krahnstoever admitting that YouTube is for "shar[ing] videos with other people"). Yet when Dr. Schonfeld purported to apply the Court's construction in his infringement analysis, he insisted that YouTube was *not* designed for multiple recipients and thus did not transmit "television programming":

> Q. And so what is your opinion as to whether television programming, as construed by the Court, is met in the '528 patent?
>
> A. Yeah. It is my opinion that it is not met, for the same reason it's not designed for multiple recipients.

11/4/20 Tr. at 729:16-20; *see also id.* at 751:9-11 (same for '344 Patent).

Nowhere was the contradictory nature of Dr. Schonfeld's testimony more apparent than in his discussion of the television program M*A*S*H. He admitted that M*A*S*H was originally "designed for multiple recipients" within the Court's construction of "television programming." *See* 11/5/2020 (Seal 11-12 AM) Tr. at 68:23-69:7 (testifying that broadcasting "classical regular television," like when "CBS puts a program out such as M*A*S*H," is television programming). Yet Dr. Schonfeld testified to the jury that such an obvious example of television programming is

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

no longer television programming if it is played on YouTube:

> Q. In your demonstrative, you testified that M*A*S*H, when it went to those television sets, was an example of television programming, right?
>
> A. Yes.
>
> Q. But, now, when you see it playing on YouTube, you say M*A*S*H all of a sudden is not television programming, right?
>
> A. Absolutely.

*Id.* at 784:26-785:6. The only difference between M*A*S*H on YouTube and M*A*S*H on broadcast TV is that one was transmitted on a broadcast schedule and one was transmitted on demand; this change in transmission means, however, does not alter that M*A*S*H was incontestably "designed for multiple recipients." Under MIL 5, Dr. Schonfeld's contrary testimony was improper. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of expert testimony based on an impermissible claim construction).

## II.    A New Trial Is Warranted Due to Google's Trial Tactics as a Whole

Google's misconduct was not limited to its mischaracterizations of claim constructions, but instead formed the core of Google's strategy and permeated every aspect of the trial, rendering the entire trial prejudicial to PMC. *See Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 473 (5th Cir. 1991) (noting that "defense counsel's misconduct in the form of improper questioning" warrants a new trial where it is "so pronounced and persistent that it permeates the entire proceeding"). The Fifth Circuit considers "the comments of counsel, ***the counsel's trial tactics as a whole***, the evidence presented, and the ultimate verdict" in determining whether "manifest injustice" warranting a new trial has occurred, even if no objection was made at the time. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 778 (5th Cir. 2009) (emphasis added) (quoting *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 765 (5th Cir. 1989)); *see also Hall v. Freese*, 735 F.2d 956, 961 (5th Cir.

1984) (recounting Fifth Circuit "rule that improper argument may be the basis for a new trial where no objection has been raised 'where the interest of substantial justice is at stake'" (quoting *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975))). Google's misconduct "permeated counsel's argument" and was "calculated to prejudice" PMC. *Edwards*, 512 F.2d at 285-86.

### a.    Google's Mischaracterizations of PMC's Patented Technology

Throughout the trial, Google repeatedly misled the jury concerning PMC's patented technology by characterizing it, explicitly and implicitly, as old and not relevant to YouTube. In the guise of providing "background" information, Google's counsel and witnesses made the *specification* of the asserted patents, rather than the *claims*, the focus of Google's defense. Google argued in both its opening and closing statements that it could not possibly infringe PMC's patents because they pre-date the modern Internet and thus could not cover Internet technology. Yet at the pretrial conference, the Court granted PMC's Motion in Limine No. 6 ("MIL 6"), which sought to exclude this precise argument:

> **6.    <u>Non-infringement, written description, and enablement arguments based on preferred embodiments.</u>** The Court should preclude Google from offering or presenting any evidence or argument that PMC's patents, or their claims, are limited to aspects of preferred embodiments from their specifications. This includes comparisons of Google's systems against the preferred embodiments that were disclosed in the specification. For example, Google should not be able to argue that it does not infringe because its YouTube service streams video over the Internet, whereas preferred embodiments do not disclose Internet streaming.

Dkt. 343 at 3-4. PMC reemphasized its specific underlying concern during oral argument:

> And the basic issue is should Google be able to argue to the jury. Look at preferred embodiments in the patent. We do Internet video streaming. The preferred embodiments in the patent don't talk about Internet video streaming. They're this different television type functionality. Therefore, we don't infringe.

> And the basic issue is should Google be able to argue to the jury. Look at preferred embodiments in the patent. We do Internet video streaming. The preferred embodiments in the patent don't talk about Internet video streaming. They're this different television type functionality. Therefore, we don't infringe.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

> And I have it on good authority that they intend to make this argument because they don't deny it in opposition to the motion in limine.

10/27/2020 Tr. at 37:15-38:3. In granting PMC's MIL 6, the Court stated unequivocally that it would not "countenance directly or indirectly front door, back door, or down the chimney any attempts to have this jury compare the embodiments to the accused products with regard to defending against infringement." *Id.* at 40:24-41:2.

Despite this ruling, Google's overwhelming trial theme was that an Internet-based service like YouTube could not possibly infringe patents that were old and did not describe examples of Internet technology. Rather than comply with the Court's ruling, Google barreled ahead with this argument at every stage of the trial. During voir dire, Google argued that the asserted patents are "older patents" and that "[t]hey have to do with, in our position, television broadcasting," whereas YouTube is the "Internet." 11/2/2020 Tr. at 70:23-71:6. This theme permeated Google's opening statement, *see, e.g.*, 11/2/2020 Tr. at 179:21-23 ("These patents are old 1981 inventions, and they don't apply to the sophisticated Internet we have today."), and Google cross-examined the very first witness about the absence of words such as "Internet" and "HTTP" in the specification, *see, e.g.*, *id.* at 254:9-255:18 ("Now, the word 'Internet' doesn't appear in the patent specification even once; isn't that correct, sir?"). It then continued throughout expert testimony, *see, e.g.*, 11/5/2020 Tr. at 699:19-701:3 (irrelevant testimony from Google's infringement expert on the history of the Internet, compared to the founding of YouTube), and was the primary focus of Google's closing argument, *see, e.g.*, 11/6/2020 Tr. at 985:10-25 ("How many times do they talk about television? Well over 300 times. How many times do they talk about the Internet? Zero. How many times do they talk about online streaming? Zero. World Wide Web? Zero.").

Google doubled down on this irrelevant and prejudicial approach by also mining the specification for outdated examples that it could use to limit the invention's scope in the minds of

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

the jury. Its infringement expert testified at length about one prominent example—the "Wall Street Week" embodiment—making sure the jury understood that this concerned an *old* television program, *see* 11/5/2020 Tr. at 693:2-12 ("[W]hen I came back from college, my mom used to like to watch it. . . . So I remember the show very -- very fondly."), and that the equipment used was *old* technology, *see id.* at 693:22-694:1 ("[I]n this case, the Wall Street Week, it would be received by a television tuner. . . . It's the Zenith television -- TV tuner . . . ."); *id.* at 694:3-5 ("Q. And so is that a tuner that -- television tuner that existed in the 1980s? A. Yeah, that's my understanding."); *id.* at 694:13-17 ("And that is described in the patent as another Zenith TV . . . [a]nd you would just watch TV like every -- like -- like every other television that you would watch back in the '80s."). He then equated this example with an asserted claim:

> A. So this is an example we spoke about earlier, which is where we -- I -- the Wall Street Week has a Dow Jones chart, and then you overlay your own user's specific stocks. Your own stocks and how they did over the past week are overlaid in this particular example and shown together on the television screen.
>
> So it has both television and the -- the computer information that was taken from your computer is put together on the screen at the same time.
>
> Q. Now, are these the asserted claims of the '217 patent?
>
> A. Yeah, this is the asserted claim of the '217 patent.

*Id.* at 704:14-25. Using the examples in the specification to limit the scope of the asserted claims is precisely what the Court had prohibited Google from doing.

### b.    Google's "Empty Chair" Argument

During the pretrial conference, in response to a motion *filed by Google*, the Court expressly prohibited any "empty-chair" arguments without "prior leave of the Court":

> I don't expect to either party to otherwise comment before the jury about the absence of a witness without prior leave the Court. . . . So to the extent beyond Ms. Sheridan that either party wants to raise an issue about anyone else not being present for trial in person, you need to approach the Court, you need to get leave in advance, and I will consider those particular circumstances as to that other person

11

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

or persons if and when that arises.

10/27/2020 Tr. at 71:23-72:11. Yet during closing arguments, Google disparaged PMC's inventors for not appearing at trial, expressly tying their nonappearance to its "television vs. Internet" theme:

> Now, you remember in the opening statement that PMC made, there was a lot of pictures of Mr. Harvey, Mr. Cuddihy, these inventors that were so brilliant.
>
> They didn't bring them to trial, did they? They're available. They could come here and told you about their inventions and explained, oh, these cover more than just television from the 1980s. These cover the Internet. They didn't bring them here. I'll let you think about that and wonder why they didn't bring them here.

11/6/2020 Tr. at 983:7-15. This statement violated the Court's express prohibition on commentary concerning the nonappearance of witnesses. In keeping with Google's overall strategy, this argument also falsely implied that (1) inventor testimony was necessary to define the scope of the claims; and (2) the inventors' nonappearance constituted a tacit admission that such scope does not include the Internet.

When confronted immediately after closings were concluded about this issue, Google's counsel acknowledged the transgression and apologized. 11/6/2020 Tr. at 1018:22 to 1019:13.[2] Indeed, after reviewing Google's closing argument and the discussion at the pretrial conference, this Court concluded that Google had engaged in "an intentional violation of the instruction [the Court] gave during pre-trial." 11/6/2020 Tr. at 1023:5-7. PMC requested that the Court give a curative instruction that specifically informed the jury of Google's intentional violation, *id.* at 1020:1-12, as this Court has done previously in dealing with intentional *limine* violations, *see Synqor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011 WL 3625036, *18-25 (E.D. Tex. Aug. 17, 2011). Here, however, the Court delivered a milder curative instruction, re-

---

[2] PMC objected to Google's closing argument as soon as the jury retired. It would not be fair to expect PMC to object contemporaneously and disrupt Google's closing, considering the Court's earlier admonition that it expected no interruptions during the jury charge and closings, which are "the most serious part of a very serious process." 11/6/2020 Tr. at 927:13-22.

12

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

publishing to the jury the "empty chair" slide from Google's closing:

> Members of the jury, the slide that you see on the monitors before you and the argument related to it during closing arguments should not have been presented to you under the prior instructions that the Court provided to the parties. You should disregard this empty chair slide and any arguments connected with it, and those should not be a factor in your deliberations or decisions.

11/6/2020 Tr. at 1025:3-9.

Respectfully, the Court's instruction did not go far enough and was insufficient to cure the substantial prejudice to PMC caused by Google's argument. The jury had already been deliberating for approximately 30 minutes by the time the Court delivered its instruction. Although the Court concluded outside the presence of the jury that Google had "intentional[ly]" violated its pretrial rulings, the Court's curative instruction left the jury with the impression that the argument could have been merely a misstep or an inadvertent mistake.[3] Nor, for that matter, would it have been clear to the jury precisely which arguments related to the slide were to be ignored. Curing the harm to PMC required a stronger repudiation of Google's argument, especially considering that Google's improper closing argument went to the heart of its improper non-infringement defense—that Google did not infringe because the inventors did not invent the Internet.

The Court's pre-trial prohibition on "empty chair" commentary aligns with its prior statement that motions *in limine* are properly reserved for "issues that if improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate

---

[3] Google's counsel also asserted that PMC made its own empty-chair argument in closing. This is not true. In discussing the IPG license defense, PMC remarked: "The first aspect of YouTube is this guide that you see right there. That guide is subject to the licensed YouTube claims it has, even though it never brought a witness to actually tell you that, that covers guide functionalities." 11/6/2020 Tr. at 977:22 to 978:1. Pointing out that no witness appeared to testify as to a certain fact is plainly proper; it is no different from pointing out that Google lacked documents to establish certain facts. PMC's argument was not remotely similar to disparaging Google for failing to bring a specifically identified witness and asking the jury to draw an adverse inference from that failure, as Google did to PMC with Mr. Harvey and Mr. Cuddihy.

13

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

instructions to the jury." Dkt. 188 at 2. As the Fifth Circuit has recognized, sometimes (as here) curative instructions are inadequate to overcome the prejudice of improper jury argument. *Houston v. Estelle,* 569 F.2d 372, 383 (5th Cir. 1978) ("[C]urative instructions are a device to be employed and the utility of which is to be respected. Nonetheless, we are convinced that in the circumstances of this case, this mild cure was insufficient to purge the taint."); *United States v. Cisneros*, 491 F.2d 1068, 1075-76 (5th Cir. 1974) ("More important, though we decline to speculate on the probable efficacy of limiting instructions as a general matter, we believe that the comments here challenged were simply too harmful to be cured by the other instructions given to the jury.").

A "district court may order a new trial if improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions." *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc*., 848 F.2d 613, 619 (5th Cir. 1988). In this case, the Court specifically prohibited empty-chair arguments during the pre-trial, significantly changing the course of the parties' trial presentation. *Cf. Wallner v. Ziegler*, 470 F. App'x 230, 232 (5th Cir. 2012) (holding that empty-chair argument in closing did not warrant a new trial in a case where there was ***no*** pre-trial prohibition). PMC made its decision not to call the inventors in reliance on this Court's pre-trial ruling. Had there been no such ruling, PMC would likely have called its inventors, or even if it didn't call them, it would have explained to the jury that its elderly inventors were not called to trial because their health concerns about COVID-19 outweighed the limited relevance of their testimony about their inventions, especially in light of Google dropping its invalidity defenses.

**CONCLUSION**

Google deployed a deliberate trial strategy to distract the jury's attention from the actual issue in dispute, *i.e.*, whether YouTube practices each step of the asserted claims. Its cumulative violations of the Court's motions *in limine*, particularly those concerning the standard for patent infringement and claim construction, and its improper "empty chair" closing argument, warrant a

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

new trial. To the extent that Google seeks to excuse itself by putting the onus on PMC to object to each and every MIL violation at the time it occurred, the absence of an objection is no bar to the relief PMC seeks. *See Alaniz*, 591 F.3d at 778; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 70 (Fed. Cir. 2012) ("While LaserDynamics is correct that QCI made no pre-verdict objection or raised any challenge whatsoever . . . under Fifth Circuit law this ostensible waiver by QCI does not preclude the district court from exercising its discretion to consider the issue."). PMC did object to Google's expert's attempt to compare an example of a multi-tiered distribution network in the specification with the accused YouTube service, *see id.* at 701:11-702:15 (expert's contrasting the Wall Street Week example as "a television system were everything is broadcast" against the World Wide Web's "client-server architecture, where you make a request and you get a response," even though the claims make no such differentiation), and its "empty chair" closing. The complained-of conduct must be seen in the context of Google's continued, repeated violations of the Court's orders, as well as PMC's nightly MIL 5 and MIL 6-based objections to Google's deposition designations and demonstratives, many of which Google withdrew rather than risk drawing further negative attention from the Court.

The right to a fair trial has to mean something more than PMC's ability to keep up with a seemingly endless game of whack-a-mole; at some point, Google must be held to account for its campaign that "permeated" the trial and was "calculated to prejudice" PMC. *Edwards*, 512 F.2d at 285-86; *see also, e.g.*, *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 278 (5th Cir. 1998) ("Of course, we need not find that each statement, taken individually, was so improper as to warrant a new trial. Rather, taken as a whole, these comments prejudiced the jury's findings . . . ."). Google's scheme to unfairly prejudice the jury cannot be cured except by a new trial.

15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated:  December 10, 2020                    Respectfully submitted,

                                             By: */s/ Joseph S. Grinstein*_____

Arun Subramanian
New York State Bar No. 4611869
Tamar Lusztig
New York State Bar No. 5125174
Geng Chen
New York State Bar No. 5377262
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019-6023
Telephone: (212) 336-8330
asubramanian@susmangodfrey.com
tlusztig@susmangodfrey.com
gchen@susmangodfrey.com

Joseph S. Grinstein
Texas State Bar No. 24002188
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 653-7820
Fax: (713) 654-6666
jgrinstein@susmangodfrey.com

Meng Xi
California State Bar No. 280099
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Fax: (310) 789-3150
mxi@susmangodfrey.com

Floyd G. Short
W.A. Bar No. 21632
Rachel S. Black
W.A. Bar No. 32204
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98191
Telephone: (206) 516-3880
Fax: (206) 516-3883
fshort@susmangodfrey.com

16

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

rblack@susmangodfrey.com

S. Calvin Capshaw
Texas Bar No. 03783900
Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX LLP
114 E. Commerce Avenue
Gladewater, TX 75647
Telephone: (903) 233-4826
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Dmitry Kheyfits
New York State Bar No. 4743795
KHEYFITS BELENKY LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (212) 203-5399
dkheyfits@kblit.com

Timothy R. DeWitt (*Pro Hac Vice*)
VA Bar No. 40522
24IP LAW GROUP USA, PLLC
424 Fourth Street, Suite C2
Annapolis, MD 21403
Tel.: (410) 212-2539
Fax: (410) 295-5096
tdewitt@24ipusa.com

*Attorneys for Personalized Media
Communications, LLC*

17

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that this document is being filed under seal pursuant to the terms of the protective order entered in this case because it contains material designated by one of the parties as highly confidential.

*/s/ Geng Chen*
Geng Chen

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 10, 2020, I caused the foregoing to be electronically served on counsel of record for Google through email and/or the Court's ECF system.

*/s/ Geng Chen*
Geng Chen